UNITED STATES, Appellee,

v.

Ronald N. LITTLE, Private, U.S. Army, Appellant.

No. 32,019.

U. S. Court of Military Appeals.

Sept. 10, 1976.

Colonel Alton H. Harvey, Captain John R. Osgood, and Captain Barry J. Wendt were on the pleadings for Appellant, Accused.

Lieutenant Colonel Donald W. Hansen, Major John T. Sherwood, Jr., Captain Dana C. McCue, and Captain Gary F. Thorne were on the pleadings for Appellee, United States.

## OPINION OF THE COURT

PER CURIAM:

The appellant challenges the jurisdiction of the court-martial which convicted him of consensual sodomy contending that he can neither read nor write and that he was fraudulently enlisted. *United States v. Russo,* 23 U.S.C.M.A. 511, 50 C.M.R. 650, 1 M.J. 134 (1975).

In affirming appellant's conviction, the Army Court of Military Review addressed the jurisdictional issue and held:

Without reciting at length a summary of the conflicting testimony contained in the record concerning the appellant's illiteracy and whether he did in fact take the required written examinations, it is suffice to say that were we to believe appellant's evidence this case would fall within the pale of *United States v. Burden*, 23 U.S.C.M.A. 510, 50 C.M.R. 649, 1 M.J. 89 (1975), and to a lesser degree, *United States v. Russo*, 23 U.S.C.M.A. 511, 50 C.M.R. 650, 1 M.J. 134 (1975). However, we are convinced beyond a reasonable doubt from the evidence of record that, although his writing comprehension level was impaired to a marked extent, appellant was sufficiently lettered to read, write, comprehend and pass the Armed Forces Qualification Tests and that he did so prior to his entry into the service. We hold that the court had jurisdiction over the appellant.

Appellant's jurisdictional attack essentially has three prongs: first, that the recruiter acted improperly by completing in advance the answers to the accused's second AFQT which the accused then merely signed; second, that the recruiter violated pertinent regulations by continuing to recruit the accused once on notice through the accused's mother that he could neither read nor write; and third, that the recruiter compromised the second AFQT by explaining the meaning of some of the words in the test questions in violation of Army regulations.

■ The language of the Court of Military Review opinion is sufficiently broad to conclude that all factual disputes surrounding the fraudulent enlistment issue were resolved against the accused below. Thus, our inquiry necessarily is limited to determining whether the evidence of record is legally sufficient to support the Army court's findings of fact on the jurisdictional question. *United States v. McCrary*, 1 U.S. C.M.A. 1, 1 C.M.R. 1 (1951). *See also* Article 67(d), Uniform Code of Military Justice, 10 U.S.C. § 867(d).

■ With regard to the allegation that the recruiter filled in the answer form for the second AFQT and merely had the appellant sign it, it is sufficient to note that the accused's version is in direct conflict with that of the recruiter who denied under oath providing the answers to any of the test questions. Hence, the Court of Military Review's finding that the *Russo* decision was not dispositive on this facet of appellant's jurisdictional attack is factually supported by the Government's evidence of record.

■ In response to the appellant's contention that the recruiter violated Army regulations [1] by continuing to recruit the accused after being told by Private Little's mother that he was illiterate, the Government's argument suggests that the AFQT was the proper means for resolving whether Private Little could read and write, and the recruiter should not be forced "to measure the immeasurable." Commenting on the adequacy of its own recruiting regulation, the Government acknowledges:

The regulation in question provides no guidance to recruiters as to the level of reading and writing proficiency required of applicants. Unfortunately the regulation is written as though enlistees can be easily divided into those who can read and write and those who cannot, much as one would divide the males from the females. Faced with trying to measure the immeasurable, a recruiter . . . might logically assume that if the enlistee had attended grammar school he should be able to read and write to a sufficient degree. Of course, we learn later at trial that although appellant had indeed attended school, his advancement in grades resulted from "social promotions," not academic achievement.

We are in accord with the Government's analysis of the shortcomings of its own regulation. Nevertheless, the AFQT, if administered properly, is more than adequate to assure that those enlistees who cannot read and write do not qualify for enlist-

---

1. Paragraph 4–12, AR 601–270 (Dec. 3, 1973).

ment. To force recruiters to make subjective determinations with respect to literacy without any guidelines whatsoever strikes us as most unreasonable particularly where a vehicle for objectively measuring reading and, to some extent, writing skills is readily available in the AFQT itself.

The difficulty we perceive in the recruiter's conduct here stems from his acknowledged assistance to the accused on the second AFQT which thereby short-circuited its usefulness in determining literacy as well as overall mental competency for enlistment. After initially failing the AFQT with a score of less than 10 out of a possible 100,[2] the appellant was retested and scored a passing grade of 31. The recruiter denied giving the appellant the answers to the test or taking the test for him. However, he admitted that during the second test the accused "asked me questions of words he didn't understand, [and] I explained the words to Private Little and what they meant. . . . " The recruiter further acknowledged that, in effect, he had explained the meaning of some of the questions although he did not provide the answers.

Conceding that the recruiter's action "may be a technical violation of the applicable regulation,"[3] the Government suggests that it was not recruiter misconduct sufficient to void the appellant's enlistment. We do not agree. The recruiter's assistance made it virtually impossible to resolve whether the accused could read and write based upon the only objective standard of measurement available. Hence, the recruiter's "technical violation" of the regulation succeeded in destroying the only vehicle available to determine literacy, one of the essential prerequisites for enlistment. The recruiter's impropriety takes on additional significance when it is recalled that he acknowledged having prior notice from the appellant's mother that her son could not read or write and hence was not qualified for enlistment.

We conclude, therefore, that as a matter of law,[4] the recruiter's self-acknowledged assistance to the accused on the AFQT facilitated a fraudulent enlistment by "render[ing] . . . meaningless the established minimum test scores for enlistment." *United States v. Russo, supra* at 512, 50 C.M.R. at 651, 1 M.J. at 135. For the reasons set forth in *Russo*, the decision of the Court of Military Review is reversed and the findings of guilty and the sentence are set aside.[5] The charge is ordered dismissed.

2. Paragraph 3–21a(1), AR 601–270 (Dec. 3, 1973).

3. Paragraph 3–2(g), AR 611–5 (Mar. 10, 1969).

4. Implicit within this holding is our belief that the Court of Military Review's conclusion that the appellant could "comprehend" the second AFQT is not factually supported by any evidence of record. *See generally United States v.*

*Baldwin,* 17 U.S.C.M.A. 72, 77, 37 C.M.R. 336, 341 (1967); *United States v. Wheatley,* 10 U.S. C.M.A. 537, 539, 28 C.M.R. 103, 105 (1959).

5. Our disposition of the first granted issue makes it unnecessary to decide the remaining questions raised by appellant.