**UNITED STATES**

v.

**David Loyd HARRISON, 231 94 9878, Seaman Recruit (E–1), U. S. Navy.**

**NCM 77 0239.**

U. S. Navy Court of Military Review.

Sentence Adjudged 29 Oct. 1976.

Decided 18 Aug. 1977.

---

CAPT Joseph F. Smith, USMCR, Appellate Defense Counsel: LT Steven D. Moore, JAGC, USNR, Appellate Government Counsel.

Before DUNBAR, BAUM and GREGORY, JJ.

## 1022

GREGORY, Judge:

Appellant was tried before a general court-martial with members and, contrary to his pleas, was convicted of: attempted larceny, in violation of Article 80, UCMJ, 10 U.S.C. § 880; willful damage to military property of the United States, in violation of Article 108, UCMJ; larceny, in violation of Article 121, UCMJ; extortion, in violation of Article 127, UCMJ; assault, in violation of Article 128, UCMJ; housebreaking, in violation of Article 130, UCMJ; and false swearing, and two counts of wrongful communication of a threat, in violation of Article 134, UCMJ. Appellant's sentence was approved by the convening authority and consists of total forfeitures, confinement at hard labor for four years, and a bad conduct discharge.

The following errors have been assigned for our consideration:

I. THE CHARGES WERE NOT PROPERLY REFERRED TO TRIAL.

II. THE COURT LACKED *IN PERSONAM* JURISDICTION OVER APPELLANT.

III. THE TESTIMONY GIVEN BY SA BRABSON WAS OBTAINED IN VIOLATION OF ARTICLE 31, UCMJ.

IV. THE TESTIMONY GIVEN BY SN McCUMBER WAS OBTAINED IN VIOLATION OF ARTICLE 31, UCMJ.

V. THE JUDGE ERRED IN ALLOWING THE PROSECUTION TO INTRODUCE EVIDENCE OF UNCHARGED MISCONDUCT PRIOR TO FINDINGS.

VI. THE JUDGE ERRED IN FAILING TO GIVE PROPER LIMITING INSTRUCTIONS ON UNCHARGED MISCONDUCT PRIOR TO FINDINGS.

VII. THE JUDGE ERRED IN INSTRUCTING THE MEMBERS TO CONSIDER INADMISSIBLE UN-

CHARGED MISCONDUCT AT THE PRESENTENCING STAGE OF THE TRIAL.

We do not concur in these assignments of error and affirm, limiting our discussion to the matters raised in Assignments I and II.

I

■ Citing *United States v. Alexander*, 25 U.S.C.M.A. 382, 54 C.M.R. 1108, 2 M.J. 237 (1977), appellant argues that, as the record of trial does not reflect whether or not the charges in the instant case were properly referred to trial, a limited rehearing is necessary to resolve the matter. We disagree.

Considering, as we may [1], an affidavit and allied documents submitted on this issue by appellate Government counsel, we find that on 29 July 1976 Captain D. A. Woodward, U. S. Navy, as Chief of Staff, temporarily succeeded to command of the Thirteenth Naval District, pursuant to Article 0859, U. S. Navy Regulations, upon the incapacitation (heart attack) and by direction of the Commandant, Rear Admiral James D. Murray, Jr., U. S. Navy. Captain Woodward continued as Acting Commandant, Thirteenth Naval District, until 16 September 1976, the date upon which Rear Admiral Murray returned and resumed his duties as Commandant. This temporary succession to command clearly empowered Captain Woodward to convene a general court-martial in his own right. *See United States v. Bunting*, 4 U.S.C.M.A. 84, 15 C.M.R. 84 (1954). The record shows that it was while he was so empowered that Captain Woodward convened appellant's general court-martial on 14 September 1976 and, on the following day, referred the instant charges to trial. The absence of any perceptible basis for doubting the propriety of that referral renders a limited rehearing pursuant to *Alexander, supra,* unnecessary and leaves Assignment of Error I devoid of merit. *See United States v. Alexander*, 3

1. *See United States v. Weaver*, 23 U.S.C.M.A. 445, 50 C.M.R. 464, 1 M.J. 111 (1975); *United States v. Roberts*, 7 U.S.C.M.A. 322, 22 C.M.R.

112 (1956); *United States v. Williams*, 6 U.S. C.M.A. 243, 19 C.M.R. 369 (1955).

M.J. 107 (C.M.A.1977) (Summary disposition).

## II

The minimum statutory age for enlistment in the Navy is, and was at the time of appellant's enlistment, seventeen with parental consent and eighteen without. 10 U.S.C. § 505(a) (1970). Accordingly, an individual under the age of seventeen is statutorily incompetent to acquire military status, *see United States v. Brown*, 23 U.S.C. M.A. 162, 48 C.M.R. 778 (1974), and *United States v. Blanton*, 7 U.S.C.M.A. 664, 23 C.M.R. 128 (1957); but, the Government may show a constructive enlistment where such an individual enlists but continues to serve after reaching age seventeen despite the fact that parental consent is never obtained. *See United States v. Brown, supra; United States v. Catlow*, 23 U.S.C. M.A. 142, 48 C.M.R. 758 (1974); *United States v. Graham*, 22 U.S.C.M.A. 75, 46 C.M.R. 75 (1972); *United States v. Overton*, 9 U.S.C.M.A. 684, 26 C.M.R. 464 (1958).

Appellant enlisted in the Navy at age sixteen. Since his enlistment was statutorily void from the outset, there could never have been court-martial jurisdiction in this case unless, after reaching age seventeen, appellant underwent a constructive enlistment and thereby acquired the military status upon which court-martial jurisdiction over the person necessarily depends.

Constructive enlistment is based upon two elements: (1) the voluntary performance of military duties, and (2) the acceptance of military benefits. *United States v. Brodigan*, 50 C.M.R. 419 (N.C.M.R. 1975); *United States v. Reid*, 15 C.M.R. 899 (A.F.B.R.1954); *Mayborn v. Heflebower*, 145 F.2d 864 (5th Cir. 1944), *cert. denied*, 325 U.S. 854, 65 S.Ct. 1087, 89 L.Ed. 1975 (1945); *Hibbs v. Catovolo*, 145 F.2d 866 (5th Cir. 1944), *cert. denied*, 325 U.S. 854, 65 S.Ct. 1085, 89 L.Ed. 1974 (1945). *See United States v. Catlow*, and *United States v. Graham*, both *supra*. The acquisition of military status by way of a constructive enlistment is a fact which must be established by the evidence of record, *see United States v. Overton, supra*, for jurisdiction over the person is "not a matter lightly to be presumed, and must be shown clearly." *United States v. Garcia*, 5 U.S.C.M.A. 88, 95, 17 C.M.R. 88, 95 (1954). *See generally United States v. Brodigan, supra*.

Turning to the record of trial in the instant case, we find that: appellant was enlisted in the Navy on 31 July 1975,[2] while sixteen years of age; appellant attained the age of seventeen years on 2 December 1975; upon learning of appellant's enlistment shortly before he departed for recruit training, appellant's parents were favorably disposed toward his continuation in military service; on 12 January 1976 appellant applied for an identification card for his wife, and on 21 January 1976 it was issued; on 27 January 1976 appellant filed a travel claim for which he received $148.00 on 5 March 1976; after 2 December 1975, his seventeenth birthday, and before 30 June 1976, the date upon which he committed the offenses for which he stands convicted, appellant accepted military pay and allowances; prior to the instant court-martial proceedings, appellant never informed his superiors of his true age; appellant lied about his age in order to enter the service because, in his words, "I wanted to try to do something with my life . . . I am patriotic. I felt that maybe I could secure a place in the future of my country"; and, that appellant, counseled by the Commanding Officer, USS CAMDEN (AOE 2), gave his word that he would do his best to perform his assigned duties. The facts thus established leave no doubt that appellant voluntarily performed his military duties and accepted military benefits after his seventeenth birthday and that he therefore so conducted himself after the termination of his statutory ineligibility for military service as to accomplish a constructive enlistment, to acquire military status, and thereby to subject himself to court-martial jurisdiction.

---

2. Appellant spent four days in the Naval Reserve (31 July to 4 August 1975) and then enlisted in the Regular Navy on 5 August 1975.

The thrust of appellant's second assignment of error is that, conceding the existence of a constructive enlistment, the Government is nevertheless estopped from relying upon it in asserting court-martial jurisdiction over appellant since his recruiter acted improperly in the enlistment process. This issue was first raised at trial when, prior to the entry of pleas, appellant's defense counsel moved to dismiss for lack of jurisdiction. In support of his motion, trial defense counsel offered a written brief and argument (Defense Appellate Exhibit A) in which he alleged, alternatively, that appellant's recruiter had either actual knowledge of appellant's statutorily disqualifying age, or that he should be charged with constructive knowledge of that fact which, it was argued, would have been revealed to the recruiter had he pursued a reasonable inquiry and at least minimally complied with the applicable recruiting regulations regarding age verification. With the issue thus raised at trial, the Government acquired the obligation to affirmatively establish jurisdiction over appellant. *United States v. Russo*, 23 U.S.C.M.A. 511, 50 C.M.R. 650, 1 M.J. 134 (1975); *United States v. Graham*, and *United States v. Garcia*, both *supra*. We hold, however, that this obligation amounted to no more than proving by a preponderance of the evidence[3] that appellant's recruiter did not have *actual knowledge* at the time he processed appellant's enlistment application that appellant was less than the eighteen years of age he claimed to be; i. e., that the recruiter did not further appellant's enlistment while cognizant of a fact which rendered appellant ineligible for military service. In a case such as this where, in the face of a clearly established constructive enlistment, recruiter misconduct is asserted as the basis for denying the existence of court-martial jurisdiction over the person of an accused, such jurisdiction will nevertheless be recognized if the evidence of record satisfies the applicable standard[4] in proving that the recruiter's alleged misconduct did not amount to a violation of the fraudulent enlistment statute, Article 84, UCMJ.

In *United States v. Russo, supra*, the Court of Military Appeals took a major step in sweeping away much of the confusion, uncertainty, and misdirection which, up until the issuance of the opinion in that case, appears to have precluded clear, concise, and consistent understanding of the law with regard to the impact of recruiter misconduct upon court-martial jurisdiction. Specifically, the High Court declared:

> Previously we have held that "fairness prevents the Government from . . . relying upon a constructive enlistment as a jurisdictional base" where Government agents acted improperly in securing an individual's enlistment. *United States v. Barrett*, 23 U.S.C.M.A. 474, 50 C.M.R. 493, 1 M.J. 74 (1975).
>
> \* \* \* \* \* \*
>
> Because fraudulent enlistments are not in the public interest, we believe that common law contract principles appropriately dictate that *where recruiter misconduct amounts to a violation of the fraudulent enlistment statute* [Article 84, UCMJ] . . . *the resulting enlistment is void as contrary to public policy.* Hence the change [from civilian to military status] . . . never occurred in this case. (footnotes omitted) (emphasis added) [23 U.S.C.M.A. at 513, 50 C.M.R. at 652, 1 M.J. at 137].

In framing the recruiter misconduct issue in these terms, the Court of Military Appeals augmented the oft quoted estoppel

---

**3.** Appellant was charged with neither desertion nor unauthorized absence; hence, resolution of this jurisdictional issue was merely an interlocutory question which did not involve the resolution of factual disputes going to the ultimate question of guilt or innocence and which, therefore, did not invoke a more rigid standard of proof. *See* Paragraph 57, *Manual for Courts-Martial, United States, 1969* (Revised edition), and *United States v. Bobkoskie*, 54 C.M.R. 681, 1 M.J. 1083 (N.C.M.R.1977), *pet. denied*, 3 M.J. 118 (C.M.A.1977). *Compare United States v. Spicer*, 3 M.J. 689 (N.C.M.R.1977).

**4.** *See generally* footnote 3, *supra*.

analysis [5] with a consistent but substantially more meaningful conceptualization of the issue; a conceptualization which does not presuppose a viable constructive enlistment and resultant change in status upon which the Government is estopped from relying, but one which denies that these could ever be realized for military justice purposes given a fraudulent enlistment brought about with the requisite degree of recruiter misconduct.

Pursuing this "fraudulent enlistment" analysis of *Russo,* we first turn to Article 84, UCMJ, which states in pertinent part that:

> Any person subject to this chapter who effects an enlistment . . . in . . the armed forces of any person who *is known to him to be ineligible for that enlistment* . . . because it is prohibited by law, regulation, or order shall be punished as a court-martial may direct. (Emphasis added).

A recruiter violates Article 84 when he actually knows of facts which render an applicant ineligible but effects his enlistment regardless. Paragraph 163 of the *Manual, supra.*

■ In the wake of *Russo* and its progeny, *United States v. Burden,* 23 U.S.C.M.A. 510, 50 C.M.R. 649, 1 M.J. 89 (1975), *United States v. Muniz,* 23 U.S.C.M.A. 530, 50 C.M.R. 669, 1 M.J. 151 (1975) and *United States v. Little,* 1 M.J. 476 (1976), there can be no mistaking the fact that the only recruiter misconduct which, as a matter of law, is so repugnant to public policy that it is incapable of resulting in an enlistment (constructive or otherwise) which is anything but an absolute nullity for military justice purposes is misconduct which subjects the recruiter to prosecution under Article 84, UCMJ. In *Russo, Burden, Muniz,* and *Little,* the Court of Military Appeals found recruiter misconduct amounting to a violation of Article 84, UCMJ, since in each

case a recruiting official furthered the enlistment of an applicant while possessed of *actual knowledge* that the applicant was ineligible; i. e., he was either illiterate, failed to legitimately pass the Armed Forces Qualifications Test, or both. For the reasons set forth in *Russo,* the Court held in all four of these cases that the presence of recruiter misconduct amounting to a violation of Article 84, UCMJ, precluded a valid enlistment, the acquisition of military status, and, hence, a finding of court-martial jurisdiction. To the extent that Court of Military Appeals cases decided before and indistinguishable on their facts from *Russo* can be interpreted as having held that recruiter misconduct which does not violate Article 84, UCMJ, is capable of preventing the exercise of court-martial jurisdiction over an improperly enlisted accused, we believe they no longer reflect the present state of the law.

Neither public policy nor the interest of assuring that recruiters faithfully perform their duties stands to be furthered by automatically invalidating court-martial proceedings merely because an accused was fortunate enough to have been recruited by someone who, while not violating Article 84, UCMJ, nevertheless negligently or intentionally failed to process his enlistment application in strict accordance with the letter and intent of prescribed recruiting regulations and procedures. Timely and unflinching prosecution of recruiters for one or more of the offenses proscribed by Article 92, UCMJ, or under some other article of the Code, appears to us a more sensible and infinitely more effective way to discourage recruiter misconduct and to promote the public good. The way to protect the military society from enlistments produced by such misconduct is to discipline those who choose to ignore their obligations to society mandated by regulations and enforced by

---

5. This analysis, adopted by appellant at trial and on appeal to this Court, holds that recruiter misconduct does not prevent an originally void enlistment from ripening into a constructive enlistment through the passage of time and development of circumstances; instead, recruiter misconduct merely estops the Government from basing personal court-martial jurisdiction upon such an enlistment and the military status it confers.

the Code.[6] In *Russo, Burden, Muniz,* and *Little,* it was not the mere fact of recruiter misconduct which voided the resulting enlistments. They were voided instead because each one amounted to a "fraudulent enlistment" procured with the active participation of an agent of the Government who thereby violated Article 84, UCMJ, and, as the Court stated in *Russo,* because fraudulent enlistments are not in the public interest and since common law contract principles dictate that they be held void as against public policy.

Viewing the jurisdictional issue posed in appellant's second assignment of error from this perspective and in the light shed by the facts establishing a constructive enlistment in this case, only one question remains: Does the evidence of record establish by a preponderance of the evidence that appellant's recruiter did not know that appellant was less than eighteen years of age, hence statutorily ineligible for military service, at the time he processed appellant's enlistment application? We believe that it does. Appellant, aware of his statutory ineligibility for military service told his recruiter that he was eighteen years of age, born on 2 December 1956. Since appellant stated that he could not produce a birth certificate, the recruiter sought to verify appellant's age by contacting the Virginia Bureau of Vital Statistics, but received no response. As an alternative means of verification, the recruiter consulted what appellant claimed to be a family Bible which contained a family tree listing appellant's birthdate as 2 December 1956.[7] The recruiter telephonically checked the Bible's authenticity and the 1956 birthdate through a woman who identified herself as appellant's grandmother and, considering appel-

lant's age sufficiently verified, completed processing appellant's application for enlistment.

We believe the record shows that, while processing that application, the recruiter was aware of nothing which might have put him on notice that appellant was less than the eighteen years he, the Bible, and the woman who identified herself as appellant's grandmother claimed he was. Whether the recruiter should have known or otherwise should be held responsible for his failure to discover appellant's true age does not concern us here. The fact remains sufficiently established that, throughout the enlistment process, the recruiter mistook appellant for eighteen; we therefore find that the recruiter did not violate Article 84, UCMJ, during that process since appellant was not *"known to him"* to be ineligible for enlistment by reason of age. Since appellant's voluntary performance of military duties and acceptance of benefits after reaching age seventeen were untainted by prior recruiter misconduct amounting to a violation of the fraudulent enlistment statute, we conclude that a legitimate constructive enlistment arose which resulted in a voluntary change in appellant's status from civilian to sailor and therefore made him amenable to trial by court-martial.[8] Appellant's second assignment of error is therefore denied.

The findings and sentence as approved on review below are affirmed.

Senior Judge DUNBAR and Judge BAUM concur.

---

6. *See* Chief Judge Fletcher's concurring opinion in *United States v. Perry,* 25 U.S.C.M.A. 297, 54 C.M.R. 813, 2 M.J. 113 (1977).

7. In reality, this was not the appellant's "family Bible"; it was, instead, a Bible appellant had found around the house and into which he had copied all of the information from the family tree in his grandmother's family Bible—save his correct birthdate.

8. Pursuing the *Russo* "fraudulent enlistment" analysis, we have found no recruiter misconduct capable of preventing the establishment of a valid enlistment contract or of a legitimate constructive enlistment upon which to base court-martial jurisdiction. In terms of the "estoppel" analysis pursued by appellant, we find no recruiter misconduct capable of preventing the Government from basing court-martial jurisdiction upon a clearly established constructive enlistment.