UNITED STATES, Appellee,

v.

Sergeant Samuel B. HIGHTOWER, SSN 459–78–9111, United States Army, Appellant.

SPCM 12827.

U. S. Army Court of Military Review.

22 June 1978.

Captain Buren R. Shields, III, JAGC, argued the cause for the appellant. With him on the brief were Colonel Robert B. Clarke, JAGC, Lieutenant Colonel John R. Thornock, JAGC, and Major Benjamin A. Sims, JAGC.

Captain Richard A. Kirby, JAGC, argued the cause for the appellee. With him on the brief were Colonel Thomas H. Davis, JAGC, and Lieutenant Colonel R. R. Boller, JAGC.

Before CLAUSEN, CARNE and COOK, Appellate Military Judges.

## OPINION OF THE COURT

CARNE, Senior Judge:

Appellant, a U. S. Army recruiter, was convicted, contrary to his pleas, of three specifications of effecting unlawful enlistments, in violation of Article 84, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 884, and one specification of failure to obey the enlistment regulation, in violation of Article 92, UCMJ, 10 U.S.C. § 892. At his trial before a special court-martial, appellant received a sentence of a bad-conduct discharge and reduction to the lowest enlisted grade. The convening authority approved the sentence. Our review of appellant's case is pursuant to Article 66, UCMJ.

Appellant was the junior member of a two-man recruiting station under the supervision of Sergeant First Class Ward. Staff Sergeant Riddle, with whom appellant was acquainted from prior association, was a member of a neighboring recruiting station. Appellant and Riddle apparently were in the practice of "feeding" applicants for enlistment processing into each other's recruiting jurisdiction, a practice which, if the applicant is otherwise eligible for enlistment, is permissible. Each of the four specifications now before us concerns the unlawful enlistment of a different applicant. The threshold question in the instant case, therefore, is whether these particular applicants, who were being processed from one recruiting jurisdiction to another, were eligible for enlistment. If the applicants are determined to have been ineligible for enlistment, the ultimate question becomes whether appellant effected their enlistment knowing the applicants to be ineligible. Resolution of these questions requires that we set forth the facts relating to each enlistment.

John Corner took the Armed Forces Qualifications Test (AFQT) in Riddle's jurisdiction, but did not achieve the requisite score to satisfy the mental requirement for enlistment. Corner was subsequently offered as an applicant by Riddle to appellant. The proper procedure to be followed in enlisting an applicant who has failed the AFQT (with one exception not here applicable) is to wait at least thirty days before retesting. A retest may be accomplished after thirty days but within six months only with the permission of the appropriate recruiting area commander.[1] Retests after six months have elapsed may be authorized by the district recruiting commander.[2] In the instant case, however, appellant had Corner retested within six months without approval from any higher authority, and subsequently effected his enlistment in the U. S. Army. This conduct formed the basis for Charge I, Specification 1, alleged as a violation of Article 84, UCMJ.

Diana Pack took the Armed Forces Women's Selection Test (AFWST) in appellant's jurisdiction, but did not achieve a qualifying score. A scheme was designed whereby Karen Miller, a friend of Pack's who had previously passed the mental examination, agreed to take the test in place of Pack during a retest in Riddle's jurisdiction. There is some testimony to the effect that appellant initiated this scheme. It is also clear from the record that appellant aided Pack with full knowledge that Miller would sit for the retest in Riddle's jurisdiction, and with Riddle's knowledge of, and participation in, the scheme. Miller did in fact sit for the retest, and Pack was subsequently enlisted in the U. S. Army on the basis of Miller's score. Charge I, Specification 3, was bottomed on these facts.

Alvin Harvest failed an AFQT administered in appellant's jurisdiction. Harvest was attempting to enlist under the "buddy plan" with a friend who passed the AFQT at the same time Harvest failed. SFC Ward, appellant's supervisor, was the recruiter of credit for Harvest's friend. In an effort to ensure the friend's enlistment, Ward requested appellant's assistance in

---

1. Paragraph 4–7a (1), Army Regulation 601–210 (Change 3, 1 December 1975).

2. *Id.* at paragraph 4–7a (2).

having Harvest retested in Riddle's jurisdiction. As a result of appellant's efforts, Riddle agreed to the retest for Harvest. Appellant, who knew of Harvest's failure, nevertheless delivered Harvest to Riddle for the purpose of a retest within six months and without prior authorization. Harvest was subsequently enlisted in the U. S. Army on the basis of that retest. Charge I, Specification 4, resulted from these misdeeds.

Allen Hatmaker applied for enlistment in appellant's jurisdiction, but Hatmaker could not provide the required verification of age. After allegedly exhausting the proper channels of inquiry recommended by the applicable regulation, a form entitled "Date of Birth Verification Statement" was prepared by forging the name "B. A. Matthews" as a minister in a section of the form allowing verification by a religious institution. Whether appellant forged the signature himself, as Hatmaker alleged, or Ward forged the signature in appellant's presence, as appellant testified, need not now detain us. It is clear from appellant's own testimony that he knew that the document was false, that the use of the document was wrong, and that he personally advised Hatmaker to cover-up the forgery if questioned. Nevertheless, the appellant enlisted Hatmaker in the U. S. Army. From these facts Charge II, the Article 92, UCMJ, violation, was drafted.

I

■ Appellant first alleges that Specifications 1, 3 and 4 of Charge I do not state an offense, because failure to follow the proper retest procedure does not render the applicant ineligible within the meaning of Article 84, UCMJ, once that applicant has in fact achieved a qualifying score on the AFQT or AFWST[3] retest prior to enlistment. Our reading of the governing regulation and Article 84 leaves us unpersuaded by appellant's argument.

Article 84 reads in pertinent part as follows:

> Any person subject to this chapter who effects an enlistment . . . in . . the armed forces of any person who is known to him to be ineligible for that enlistment . . . because it is prohibited by law, regulation, or order shall be punished as a court-martial may direct.

The regulation in effect at the time of appellant's alleged offenses was Army Regulation 601–210, as amended by changes through 1 December 1975. We view the term "enlistment," as used in the regulation and in Article 84, to include the necessary processing phase prior to the actual swearing of the applicant as an enlistee.[4] Consequently, any irregularity in the administration of the examination necessary to assure the requisite mental qualification of an applicant, if that irregularity affects the eligibility of the applicant, is within the purview of Article 84.

The basic eligibility table in the enlistment regulation[5] sets forth the trainability requirements including, *inter alia*, receiving the requisite qualifying score on the AFQT or AFWST.[6] The eligibility table refers, in that same section, to Chapter 4 of the regulation for the proper administration of the AFQT and AFWST tests and retests. Chapter 4 states that the purpose of applicant processing is to ensure that all applicants accepted for enlistment meet the required qualifications and, to that end, one element of the processing phase is to pre-

---

**3.** As related earlier, the enlistment of Pack, was effected on the basis of a fraudulent AFWST score. Accordingly, this prong of appellant's argument lacks merit with regard to Specification 3. Appellant's additional argument, that his acts were not sufficiently culpable to violate Article 84 by "effecting" the enlistment of Pack because he did not have personal control over the manner of testing Pack in Riddle's jurisdiction, is rejected. As also related earlier, there is sufficient evidence of record to establish that appellant participated in the fraudulent testing scheme.

**4.** Paragraph 1–4e, AR 601–210 (C3, 1 December 1975).

**5.** *Id.* at Table 2–1.

**6.** *Id.* at Table 2–2.

vent fraudulent or erroneous enlistments.[7] Specifically, the regulation allows for enlistment on the basis of retest scores only if the retest was administered in accordance with the regulation.[8] As pointed out earlier in this opinion, the retests administered in this case were not administered in accordance with the time requirements specified in the regulation.

We conclude that effecting the enlistment of an applicant on the basis of an unauthorized retest score is prohibited by regulation, and that an applicant thus enlisted is ineligible for enlistment within the meaning of Article 84. The knowing accomplishment of such an enlistment subjects the perpetrator to prosecution under the cited statute. While this case is one of first impression in the military, involving as it does the first reported conviction under Article 84, we do not arrive at our conclusion without decisional guidance on the parameters of Article 84.

Beginning with *United States v. Russo*, 1 M.J. 134 (C.M.A.1975), enlistments have been declared void by the Court of Military Appeals where recruiter misconduct rises to the level of a violation of Article 84. In cases decided since *Russo*, the Court of Military Appeals has consistently viewed recruiter misconduct which affects the validity of the AFQT as facilitating a fraudulent enlistment in violation of Article 84, rejecting the contrary argument that such recruiter activity was merely a technical violation of the regulation. *United States v. Little*, 1 M.J. 476 (C.M.A.1976); *United States v. Muniz*, 1 M.J. 151 (C.M.A.1975);

*United States v. Burden*, 1 M.J. 89 (C.M.A. 1975).[9] We find the difference in the degree of the recruiter's participation in this case to be uncontrolling, as his actions nevertheless resulted in the enlistment of applicants known to him to be ineligible for enlistment under the regulation.

## II

Appellant alleges that he should be able to avail himself of the defense of mistake of law as to Specifications 1, 3 and 4 of Charge I. Appellant's argument rests on the theory that he did not know that prematurely retested applicants were ineligible for enlistment within the meaning of Article 84. An instruction to this effect was requested at trial by defense counsel, but was rejected by the military judge. We agree with the ruling of the trial judge that the defense was not reasonably raised by the evidence. We believe that the regulation is clear in this regard, and that appellant's demonstrated familiarity with the operation of that regulation precludes him from defending on ignorance or mistake of the legal effect of an unauthorized retest.

## III

Appellant also asserts his innocence of the offense alleged in Specification 1, Charge I, due to a reasonable mistake of fact. Appellant testified at trial that he believed that Corner had passed his first AFQT in Riddle's jurisdiction, but that Corner had to be retested because he was under age at the time of that test.[10] Appellant testified that Corner told him of the

7. *Id.* at paragraphs 4–1, 4–2.

8. *Id.* at paragraph 4–7.

9. *See United States v. Harrison*, 3 M.J. 1020, 1025 (N.C.M.R.1977); *cf. United States v. Lightfoot*, 4 M.J. 262 (C.M.A.1977) (no violation of the regulation operative at time of enlistment); *United States v. Wagner*, 3 M.J. 898 (A.C.M.R.1977) (no intentional circumventing of the regulation).

10. Corner was born on 12 December 1958, and was, therefore, of age for enlistment as of 12 December 1975. The first test was given on 14 June 1976, over six months after Corner was

seventeen. Because appellant was on notice of Corner's age at the time he processed Corner's enlistment contract (which included the date of birth and a reference to his birth certificate), we are unpersuaded by appellant's testimony. The claim of mistake of fact was limited at trial to whether appellant knew Corner failed the first test, but on appeal counsel have raised the additional allegation that appellant mistakenly believed the first test to be a nullity due to the applicant's age, thereby obviating the need for retest authorization. We do not find this additional aspect of the mistake of fact defense to be reasonably raised by the evidence.

prior failure only after Corner had been enlisted. Riddle testified, however, that he told appellant that Corner had failed before the enlistment was perfected. Although Corner could not remember when he told appellant of his failure, he testified that appellant admitted to him before he took the retest that it was illegal.

The court was properly instructed on the defense of mistake of fact regarding Corner's first test and on credibility of witnesses. We believe that the court's determination on the issue is supported by the record, therefore we decline to disturb their finding. See Article 66(c), UCMJ.

## IV

■ Appellant alleges that Articles 84 and 92, UCMJ, are constitutionally void for vagueness as applied to him. Our conclusions so far belie appellant's several arguments in this regard: that his unlawful participation in the processing phase of an applicant's enlistment should not be punishable under Article 84 if another recruiter is responsible for consummating the enlistment; that he did not know that the applicants were ineligible under Article 84 simply because the regulation was not followed for retests; and that he was not aware as to Corner that a retest was required.

■ Appellant's argument with regard to Article 92 is that the use of that article rather than Article 84 eliminated the need for the Government to prove the knowledge requirement contained in the latter article. We do not find that the ability to use different articles in appropriate cases necessarily renders either article void for vagueness. Moreover, we find that, because appellant believed Hatmaker to be of age (he

was in fact over seventeen), it was not an abuse of discretion to charge appellant with violation of the enlistment regulation under Article 92, rather than with fraudulent enlistment under Article 84.[11] The Government could hardly be required to charge under Article 84, and to prove knowledge of ineligibility, where the evidence known to the Government does not support such a charge.

We find that both articles proscribe a sufficiently definite category of misconduct to withstand constitutional scrutiny generally and as applied to appellant.

Appellant's additional assignments of error have been considered and found to be without merit.

■ In considering the appropriateness of the sentence, certain factors of the appellant's military record warrant discussion and, in our view, compel relief. The appellant has completed almost twelve years of service, during which time he has received consistent ratings of excellent in the performance of his duties. There is no record of previous convictions or of punishments pursuant to Article 15, UCMJ. He served eighteen months in Vietnam, where he was awarded the Bronze Star Medal and Air Medal with seventeen Oak Leaf Clusters, in addition to the normal service medals. He also served three years in Germany. Upon being charged with the instant offenses, the District Recruiting Commander and the Southeastern Regional Recruiting Commander recommended trial by regular special court-martial. Immediately after imposition of the sentence by the special court-martial empowered to adjudge a bad-conduct discharge, the President of the court, apparently speaking for the entire court, announced:

11. Appellant's violation of the regulation in using a partially fictitious date of birth verification statement can not affect the validity of the age qualification requirement, as could his violation of the regulation regarding retests affect the validity of the mental qualification requirement. An applicant's age is a fixed quantity, and the regulation allows for age verification by a variety of informal means. On the other hand, an applicant's mental acumen is a qualitative factor requiring a more rigid system of

evaluation. Using an improper age verification does not necessarily render the applicant ineligible; but the use of an invalid retest does render an applicant ineligible because such a retest may very well inaccurately depict one's mental acumen. As recognized in *Russo*, not every violation of the regulation in processing an applicant rises to the level of a violation of Article 84. See *United States v. Harrison, supra*, for a good discussion of the issue under similar facts.

 

The court recommends clemency be granted the accused in that an administrative discharge be granted, based upon his conduct from the end of this trial until the time action is taken by the convening authority.[12]

In a Petition for Clemency submitted after trial, three court members, a major, a command sergeant major, and a first sergeant, recommended clemency. Moreover, the offenses involved no personal gain, were sanctioned by his superior, and were a result of the existing recruiting "system," which requires that production goals be attained or exceeded to accomplish the mission.

Finally, we note that the appellant was a newcomer to the recruiting service and was on a one-year apprenticeship when the offenses occurred. His accomplices were his immediate commander, SFC Ward, and a neighboring recruiter SSG Riddle, both of whom were senior in rank and more experienced in the recruiting service. Their culpability was at least equal to, if not greater than, the appellant's, particularly when their relative positions and backgrounds are considered. Despite this fact, the record indicates the appellant received more severe punishment than his co-actors. Although we recognize there is no legal basis for sentence adjustment based on degree of culpability, equity requires our consideration of this factor in determining sentence appropriateness.

The findings of guilty are affirmed. After considering the entire record, the sentence to a bad-conduct discharge and reduction to the grade of Private (E–1) is changed to forfeiture of $200.00 pay and reduction to the grade of E–4. The sentence as changed is affirmed.

Judge COOK concurs.

CLAUSEN, Chief Judge, concurring in part and dissenting in part:

I am in full agreement with the majority in their analysis of the legal issues in this case. I disagree, however, with their commutation of the sentence. I acknowledge that appellant's past military record has been exemplary, but I do not believe that it can offset the knowing commission of four acts of recruiter misconduct within a single month, done by appellant shortly after his assignment to recruiting duties. Two of those acts, those involved in the enlistments of Pack and Hatmaker, were particularly flagrant, especially when committed by a noncommissioned officer with a background as a military policeman. A person with such a background should have had a sufficient degree of integrity to resist the pressures that result from the establishment of enlistment production goals. In a time when the nation must depend upon military recruiters for the enlistment of a quality fighting force, it must necessarily repose its trust in the soldiers selected to perform that function. Inasmuch as I believe that appellant's serious and repeated misconduct violated that trust and fully warrants a punitive discharge, I would affirm the sentence approved by the convening authority.

---

12. Although we realize that the recommended clemency action could not legally be implemented, the recommendation is indicative of the belief that clemency was appropriate.