UNITED STATES, Appellee,

v.

David Loyd HARRISON, Seaman
Recruit, U. S. Navy.

No. 34,956.
NCM 77–0239.

U. S. Court of Military Appeals.

Oct. 16, 1978.

Appearances: For Appellant—*Captain Joseph F. Smith*, USMCR (argued).

, For Appellee—*Lieutenant Steven D. Moore*, JAGC, USNR (argued); *Lieutenant Commander N. P. DeCarlo*, JAGC, USN (on brief).

Opinion of the Court

FLETCHER, Chief Judge:

The appellant, contrary to his pleas, was found guilty by members at a general court-martial of various offenses in violation of the Uniform Code of Military Justice.[1] He was sentenced to a bad-conduct discharge, confinement at hard labor for four years and total forfeitures. The general court-martial convening authority approved the sentence as adjudged. The

United States Navy Court of Military Review affirmed this decision in an opinion. 3 M.J. 1020 (N.C.M.R.1977).

At this court-martial, the defense counsel made a motion to dismiss all charges and specifications against the appellant on the ground of lack of court-martial jurisdiction over his person by reason of an invalid enlistment. The particulars of this challenge involved dual allegations of enlistment unlawfulness which were claimed to preclude the court-martial from exercising jurisdiction over the appellant as a member of thé armed forces within the meaning of Article 2(1), UCMJ, 10 U.S.C. 802(1). First, he asserted that the appellant's original enlistment contract was void as a jurisdictional base because the appellant was sixteen years old at the time of its execution. Second, he contended that the Government should be estopped from relying on a constructive enlistment in the present case because of its purported constructive notice of the appellant's under-age, and its improper recruiting practices which unlawfully allowed the appellant to enter military service so as to be in a position to commit these offenses. *See United States v. Barrett*, 1 M.J. 74 (C.M.A.1975); *United States v. Brown*, 23 U.S.C.M.A. 162, 48 C.M.R. 778 (1974). After extensive proceedings on this motion at the trial level which involved written briefs, testimony from the appellant and the recruiter, and documentary evidence, the military judge denied this motion.

The Court of Military Review conceded the original enlistment contract was void, but found a constructive enlistment on the basis of the following facts:

Turning to the record of trial in the instant case, we find that: appellant was enlisted in the Navy on 31 July 1975, while sixteen years of age; appellant attained the age of seventeen years on 2 December 1975; upon learning of appellant's enlistment shortly before he de-

---

1. He was convicted of attempted larceny, willful damage to military property, larceny, extortion, assault, housebreaking, and false swearing, and two specifications of wrongful communication of a threat, in contravention of Articles 80, 108, 121, 127, 128, 130 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 880, 908, 921, 927, 928, 930 and 934, respectively.

parted for recruit training, appellant's parents were favorably disposed toward his continuation in military service; on 12 January 1976 appellant applied for an identification card for his wife, and on 21 January 1976 it was issued; on 27 January 1976 appellant filed a travel claim for which he received $148.00 on 5 March 1976; after 2 December 1975, his seventeenth birthday, and before 30 June 1976, the date upon which he committed the offenses for which he stands convicted, appellant accepted military pay and allowances; prior to the instant court-martial proceedings, appellant never informed his superiors of his true age; appellant lied about his age in order to enter the service because, in his words, "I wanted to try to do something with my life . . . I am patriotic. I felt that maybe I could secure a place in the future of my country"; and, that appellant, counseled by the Commanding Officer, USS CAMDEN (AOE 2), gave his word that he would do his best to perform his assigned duties. The facts thus established leave no doubt that appellant voluntarily performed his military duties and accepted military benefits after his seventeenth birthday and that he therefore so conducted himself after the termination of his statutory ineligibility for military service as to accomplish a constructive enlistment, to acquire military status, and thereby to subject himself to court-martial jurisdiction. (Footnote omitted.) [3 M.J. at 1023.]

Appellate defense counsel admitted the existence of facts sufficient to justify a constructive enlistment in the present case, but reiterated the claim that the Government should, nevertheless, be estopped from relying on it in establishing court-martial jurisdiction over appellant since his recruiter acted improperly in the enlistment process. This enlistment impropriety purportedly stemmed from the recruiter's use of an alternate means of age verification, his failure to strictly adhere to the regulatory format for completing a section of the appellant's enlistment papers, and his negligence in not recognizing an age discrepancy from the appellant's police check. The Court of Military Review made the following findings of fact and conclusions of law with respect to this issue:

Appellant, aware of his statutory ineligibility for military service told his recruiter that he was eighteen years of age, born on 2 December 1956. Since appellant stated that he could not produce a birth certificate, the recruiter sought to verify appellant's age by contacting the Virginia Bureau of Vital Statistics, but received no response. As an alternative means of verification, the recruiter consulted what appellant claimed to be a family Bible which contained a family tree listing appellant's birthdate as 2 December 1956.[7] The recruiter telephonical-

[7] In reality, this was not the appellant's "family Bible"; it was, instead, a Bible appellant had found around the house and into which he had copied all of the information from the family tree in his grandmother's family Bible—save his correct birthdate.

ly checked the Bible's authenticity and the 1956 birthdate through a woman who identified herself as appellant's grandmother and, considering appellant's age sufficiently verified, completed processing appellant's application for enlistment.

We believe the record shows that, while processing that application, the recruiter was aware of nothing which might have put him on notice that appellant was less than the eighteen years he, the Bible, and the woman who identified herself as appellant's grandmother claimed he was. Whether the recruiter should have known or otherwise should be held responsible for his failure to discover appellant's true age does not concern us here. The fact remains sufficiently established that, throughout the enlistment process, the recruiter mistook appellant for eighteen; we therefore find that the recruiter did not violate Article 84, U.C.M.J. [10 U.S.C. § 884], during that process since appellant was not *known to him* to be ineligible for enlistment by reason of age. Since appellant's voluntary performance of military duties and acceptance of benefits after reaching age seventeen were untainted

by prior recruiter misconduct amounting to a violation of the fraudulent enlistment statute, we conclude that a legitimate constructive enlistment arose which resulted in a voluntary change in appellant's status from civilian to sailor and therefore made him amenable to trial by court-martial.[8]

[8] Pursuing the *Russo* "fraudulent enlistment" analysis, we have found no recruiter misconduct capable of preventing the establishment of a valid enlistment contract or of a legitimate constructive enlistment upon which to base court-martial jurisdiction. In terms of the "estoppel" analysis pursued by appellant, we find no recruiter misconduct capable of preventing the Government from basing court-martial jurisdiction upon a clearly established constructive enlistment.

■ The issue granted for review by this Court is:

DOES RECRUITER NEGLIGENCE THAT PAVES THE WAY FOR A FRAUDULENT ENLISTMENT ESTOP THE GOVERNMENT FROM PREDICATING PERSONAL JURISDICTION ON A CONSTRUCTIVE ENLISTMENT OR MUST THE RECRUITER'S ACTION VIOLATE ARTICLE 84, UNIFORM CODE OF MILITARY JUSTICE?

It is clear, in the present case, that the appellant's original enlistment contract was void as a jurisdictional base due to his statutory incapacity to contract for military service. *See United States v. Blanton*, 7 U.S.C.M.A. 664, 23 C.M.R. 128 (1957); *see also* 10 U.S.C. 505(a) (1970). As indicated in our recent decision in *United States v. Valadez*, 5 M.J. 470 (C.M.A.1978), the touchstone for determining the lawfulness of the use of the constructive enlistment doctrine as a jurisdictional base in cases involving improper recruiting practices is *United States v. Brown, supra*. Our later decision in *United States v. Russo*, 1 M.J. 134 (C.M.A.1975), was primarily concerned with the effect of recruiter misconduct, in violation

of Article 84, UCMJ, on the original enlistment contract as a jurisdictional base for a court-martial. *See United States v. Valadez, supra*. Though indirectly speaking to the issue of the effect of such conduct on a constructive enlistment, *United States v. Russo, supra*, should not be considered as formulating a new and exclusive conceptualization of recruiter misconduct for this distinguishable jurisdictional issue. Accordingly, the conclusion of the Court of Military Review that only recruiter misconduct in violation of Article 84, UCMJ, is sufficient to prevent the present realization of constructive enlistment is incorrect.

Nevertheless, the Court of Military Review, as indicated in footnote 8 of its opinion, also sustained jurisdiction over the appellant in light of the estoppel analysis contained in *United States v. Brown, supra*. To properly decide the appellant's case, it is, therefore, necessary to review this finding of the Court of Military Review.

■ The authority of a court-martial to try a person for a particular offense is a matter of federal law[2] with important constitutional[3] as well as statutory[4] ramifications. The essential issue to be decided with respect to the propriety of the exercise of court-martial jurisdiction over a particular person is whether the person has assumed the status of a member of the military forces so as to be lawfully subject to the Uniform Code of Military Justice. *See Kinsella v. United States*, 361 U.S. 234, 241, 80 S.Ct. 297, 4 L.Ed.2d 268 (1960); *In re Grimley*, 137 U.S. 147, 11 S.Ct. 54, 34 L.Ed. 636 (1890). In recognition of the gravity of the constitutional protections at stake in such a determination for the individual[5] and the constitutional interest in the protection of the primary society by an effec-

2. *United States v. Standard Oil Co.*, 332 U.S. 301, 305, 67 S.Ct. 1604, 91 L.Ed. 2067 (1947).

3. *United States ex rel. Toth v. Quarles*, 350 U.S. 11, 16–17, 76 S.Ct. 1, 100 L.Ed. 8 (1955).

4. *McClaughry v. Deming*, 186 U.S. 49, 63, 22 S.Ct. 786, 49 L.Ed. 1049 (1902); *Runkle v. Unit-*

ed States, 122 U.S. 543, 555, 7 S.Ct. 1141, 30 L.Ed. 1167 (1887).

5. *O'Callahan v. Parker*, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969); *Toth v. Quarles, supra* 350 U.S. at 16, 17, 76 S.Ct. 1.

tive and disciplined fighting force,[6] the Supreme Court has indicated, as a matter of constitutional law, that court-martial jurisdiction should be restricted to those persons who can be "fairly" said to be actual members or part of the armed forces. *Reid v. Covert*, 354 U.S. 1, 22, 23, 77 S.Ct. 1222, 1 L.Ed.2d 1148 (1957). Moreover, the Supreme Court stated in *Toth v. Quarles*, 350 U.S. 11, 23, 76 S.Ct. 1, 100 L.Ed. 8 (1955):

> Determining the scope of the constitutional power of Congress to authorize trial by court-martial presents another instance calling for limitation to *"the least possible power adequate to the end proposed."* (Footnote omitted).

Mindful of these competing constitutional considerations, this Court must proceed to interpret Article 2(1), UCMJ, 10 U.S.C. § 802(1),[7] to determine whether Congress properly intended the appellant in the present case to be subject to court-martial jurisdiction.

■ Membership in the armed forces for purposes of court-martial jurisdiction is a question which has been addressed by this Court on numerous occasions.[8] In *United States v. Russo, supra* at 137, this Court said:

> The necessary prerequisite to effect a voluntary change in status from civilian to soldier is a valid enlistment contract or a legitimate constructive enlistment.

In the present case, there is no doubt as to the invalidity of the appellant's original enlistment contract and its lack of legal effect to change his status from civilian to sailor. Accordingly, jurisdiction in the present case can only exist if the appellant effected a legitimate constructive enlistment[9] after he reached the age of seventeen. *See United States v. Graham*, 22 U.S.C.M.A. 75, 46 C.M.R. 75 (1972).

■ A review of the record of trial and the findings by the Court of Military Review provides ample evidence for our decision. After the appellant's seventeenth birthday and the concomitant elimination of his absolute statutory incapacity to contract for military service, he met with his commanding officer and promised to perform his assigned duties.[10] Though at this time the appellant had not disclosed his previous fraudulent enlistment nor his present status as a person requiring the consent of his parents to enlist, it may be construed as an offer on his part, when conditionally capable, to enlist or to mislead the Navy into accepting him as a regular member of the armed service. *See United States v. King*, 11 U.S.C.M.A. 19, 26, 28 C.M.R. 243, 250 (1959). Furthermore, the appellant received pay and allowances and performed military duties, which indicated his voluntary acceptance of his status as a sailor and

---

**6.** *Schlesinger v. Councilman*, 420 U.S. 738, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975); *In re Grimley*, 137 U.S. 147, 11 S.Ct. 54, 34 L.Ed. 636 (1890).

**7.** Article 67, Uniform Code of Military Justice, 10 U.S.C.A. § 867. *See Schlesinger v. Councilman, supra* 420 U.S. at 758, 95 S.Ct. 1300; *Noyd v. Bond*, 395 U.S. 683, 696, 89 S.Ct. 1876, 23 L.Ed.2d 631 (1969). *See also In re McVey*, 23 F. 878 (9 Cir., 1885). *Cf. O'Callahan v. Parker, supra.*

**8.** For our most recent decisions in this area, *see United States v. Wagner*, 5 M.J. 461 (C.M.A. 1978); *United States v. Valadez*, 5 M.J. 470 (C.M.A.1978).

**9.** We are mindful of the criticism of commentators as to the validity of the constructive enlistment doctrine. *See* Dillof, *The Involuntary Volunteer: Coerced Military Enlistments*, 25 Am.U.L.Rev. 437, 443 (1976); Casella, *Armed Forces Enlistment: The Use and Abuse of Con-*

tract, 39 U.Chi.L.Rev. 783, 792 n. 53 (Summer 1972). Nevertheless, in view of the language of Article 2(1), UCMJ, the traditional justification of this doctrine as explained in Digest of Opinions, Judge Advocate General of the Army (1912), p. 602 n. 1, and the past acceptance of this doctrine by this Court and those in the civilian judiciary, *see Barrett v. Looney*, 158 F.Supp. 224 (D.Kan.1958), *aff'd*, 252 F.2d 588 (10th Cir., 1958), *cert. denied*, 357 U.S. 940, 78 S.Ct. 1390, 2 L.Ed.2d 1553 (1958); *Allen v. Wilkinson*, 129 F.Supp. 73 (M.D.Pa.1958), we are presently satisfied with the lawfulness of this doctrine. *See also Reid v. Covert*, 354 U.S. 1, 22, 23, 77 S.Ct. 122, 1 L.Ed.2d 1148 (1957).

**10.** A stipulation of fact entered into at the trial level, with the consent of the appellant, states such a meeting took place in May 1976, well after the appellant's seventeenth birthday on December 2, 1975.

the responsibilities inherent in it. *See United States v. Barrett,* 23 U.S.C.M.A. 474, 50 C.M.R. 493, 1 M.J. 74 (1975). At no time prior to his court-martial did he disclose his previous fraudulent enlistment, or protest in any way his continued presence in the Navy. *See United States v. Catlow,* 23 U.S.C.M.A. 142, 48 C.M.R. 758 (1974). Finally, his parents knew of his presence in the Navy and made no effort to seek his release prior to his commission of these offenses. *Cf. In Re Morrissey,* 137 U.S. 157, 11 S.Ct. 57, 34 L.Ed. 644 (1890). In view of past precedent, both civilian and military, in this area of law, we believe the Government made a *prima facie* case for a valid constructive enlistment within the meaning of Article 2(1), UCMJ. *See United States v. King, supra.*

■ Our inquiry, however, is not ended. The use of the constructive enlistment doctrine in military courts for the purpose of establishing court-martial jurisdiction was significantly curtailed by the decision of this Court in *United States v. Brown, supra.* There, as in *United States v. King, supra,* the Court recognized inherent limitations in this judicial doctrine and refused to apply this jurisdictional concept blindly to every case where a person simply received military pay and allowances. The Court stated (23 U.S.C.M.A. at 165, 48 C.M.R. at 781):

> Combining the acts attributable to the Government, fairness prevents it from resting on a constructive enlistment as a jurisdictional base. *Cf. United States v. Catlow,* . . .

We construe this language to mean that, absent the formalities of a valid enlistment contract, court-martial jurisdiction over a purported service member should be exercised only where the Government has not acted unfairly in the first instance in placing such a person in the military environment. Such a conclusion is not at odds with the mandate of the Supreme Court to limit court-martial jurisdiction to persons fairly considered members of the armed forces. *See Toth v. Quarles, supra.*

Fairness, of course, is a somewhat amorphous term, which may give rise to misuse of the doctrine of constructive enlistment either in favor of the Government or the accused. No guidance in the form of a specific elaboration of this principle of estoppel was presented in the decision of *United States v. Brown, supra.* We opine that the Court at that time was satisfied that its detailed presentation of the facts in that case more than adequately articulated the general parameters of this concept. In any event, this is the issue before us in the present litigation, and to arrive at a proper result, we must again examine the facts of the *Brown* decision to elicit the boundaries of the principle they represent.

In *United States v. Brown, supra,* the recruit was sixteen years old at the time of his enlistment, but he provided false documentation to his recruiter showing him to be seventeen years old. A person between the ages of seventeen and eighteen cannot lawfully enlist unless he has the written consent of his parents. 10 U.S.C. § 505(a) (1970). There was no evidence in the record of trial of the proper parental consent forms required by regulations to meet this statutory requirement. Moreover, prior to taking a physical examination for enlistment a seventeen-year-old, by regulation, must have his birth date certified by his parents' signatures, which must be notarized or witnessed by the recruiter. The recruiter failed to comply with this regulation and signed the forms without personally witnessing their signatures. Brown forged his father's signature. It is clear that a major purpose behind these regulations was to create a procedure to reasonably protect recruits of this age from their own misconduct by requiring affirmative demonstration of their parent's consent. The Court correctly ruled that proper and lawful recruiting practices in this case could have disclosed Brown's fraud, prevented his enlistment, and avoided the court-martial.

In addition, prior to Brown's reaching the age of seventeen but after he began recruit training, Army authorities became aware of the absence of the proper parental consent forms in his records. Later, Brown informed his company commander and his

platoon sergeant before he was seventeen that he had fraudulently enlisted. The Court cited specific Army Regulations which required the Army to act to separate the recruit after notice of a fraudulent enlistment. *See United States v. Brown, supra,* 23 U.S.C.M.A. at 165, 48 C.M.R. at 781. Again, regulations were violated whose ultimate purpose was to set up a procedure which required the Army to act reasonably to protect against military service by such persons.

■ The Court concluded, as a matter of fairness, that the Government, under these particular facts and circumstances, should be prevented from asserting a constructive enlistment as a jurisdictional base to satisfy Article 2(1), UCMJ. We believe the gist of this fairness doctrine is the requirement by the Court that the Government, in the interest of justice, be held to its duty to be consistently legitimate in its attempt to establish the military status of an accused. More particularly, the Government asks the Court to find military status as a matter of law from a reasonable construction of the post enlistment conduct of the accused and the military so as to fairly subject him to court-martial jurisdiction for offenses committed by him while he was in fact within the military. Such a request will be denied where the Government itself in the first instance has acted in an unreasonable way in breaching its affirmative duty embraced in applicable regulations designed to prevent or discontinue the military service of the accused prior to the commission of any court-martial offense. Moreover, for this Court to hold otherwise is to permit a service to ignore its own regulations which benefit the enlistee, encourage the mistaken belief that fraudulent enlistments will ripen into valid constructive enlistment, and, finally, create future discipline and military justice problems for the armed forces. *See United States v. Brown, supra; United States v. Catlow, supra.*

■ It is against this standard that the particular facts and circumstances in the case at bar must be measured. We agree with the conclusion of the lower court that the Government is not estopped from relying on a constructive enlistment. Several factors significantly distinguish this case from *United States v. Brown, supra.* First, Harrison did not come forward prior to his seventeenth birthday and give notice to the Government of his age disqualification and his fraudulent enlistment so as to provide the service with a clear opportunity to terminate his enlistment prior to the commission of the offenses. Second, we perceive as the lower court did, that there was no violation, negligent or intentional, of regulations which would have reasonably allowed the recruiter to discover the fraudulent enlistment by the appellant so as to prevent his entrance into military service.

More particularly, with respect to the latter, the recruiter in this case attempted, in apparent good faith, to comply with proper recruiting practices in enlisting Harrison. First of all, he sent the recruit home to secure a birth certificate when he was informed that the appellant could not produce one at his initial interview. Second, in accordance with applicable recruiting regulations, he inquired in writing to the Virginia Board of Vital Statistics for proof of appellant's proper age. Third, after checking with recruiting authorities, he accepted alternative verification by means of a family Bible which was permitted by regulations and which he also made further efforts to verify.

It is true, however, that the recruiter was negligent to the extent that he failed to recognize the apparent age ineligibility from the appellant's record of juvenile involvement. We hesitate, however, to equate such an apparent inadvertent mistake by this recruiter with the failure to perform affirmative recruiting practices designed by regulation to prevent such enlistments, so apparent in the *Brown* case.

In substance, we decline to categorize the conduct of the Government in the present case as unreasonable to the extent that it failed to meet its affirmative duty by regulation to prevent or discontinue the enlistment of the appellant. Accordingly, a con-

structive enlistment was properly found to exist. Our result in this case, however, should not be misconstrued to sanction the carte blanche determinations by the lower courts of constructive enlistments. In view of the constitutional issues at stake in such a determination, no perfunctory conclusions of jurisdiction should be made on this matter.

The decision of the United States Navy Court of Military Review is affirmed.

Judge PERRY concurs.

COOK, Judge (concurring in the result):

I concur in the result for the reasons set out in my separate opinion in *United States v. Wagner*, 5 M.J. 461 (C.M.A.1978).