## Ex parte BLACKINGTON.

### (District Court, D. Massachusetts. October 17, 1917.)

### No. 1576.

ARMY AND NAVY ☞18—ENLISTMENT—VALIDITY—MEDICAL OFFICERS.

A person enlisting in the National Guard, and subsequently drafted into the federal service, is not entitled to be discharged, because he was below the height prescribed by the army regulations and was not physically fit for military service, but was passed by the medical examiner, acting as recruiting officer, because of personal bias and hostility toward the applicant, as voluntary enlistment rests on a contract, in making which the parties deal at arm's length, and neither occupies a fiduciary position towards the other, and recruiting officers and medical examiners act solely for the state or the United States, and owe no duty to the applicant to decide fairly. There was no evidence that the federal medical officers who examined the petitioner after the National Guard was drafted into the federal service acted improperly. Discharge refused.

Petition by Carl A. Blackington, for a writ of habeas corpus. Petition dismissed, and writ discharged.

Harvey D. Eaton, of Waterville, Me., and Ropes, Gray, Boyden & Perkins, of Boston, Mass., for petitioner.

The United States Attorney, for respondent.

MORTON, District Judge. Habeas corpus to secure discharge from the United States Army. The writ issued, and there was a hearing in open court upon the right to discharge. Such evidence as the petitioner desired to offer was heard. At the conclusion of it, the respondent orally suggested that no cause had been shown justifying the petitioner's release from military service, and moved that the writ be discharged and the petitioner remanded. The motion was heard without requiring the respondent to rest; and the question now is whether, upon the petitioner's own evidence, he is entitled to the relief sought.

The facts, as claimed by the petitioner, are as follows: The petitioner is a member of the bar, residing in Waterville, Me., and before his enlistment was actively engaged in the practice of his profession. When he was about three years old his head was kicked or stepped on by a horse, and the calk in the shoe punctured both the outer and inner plates of his skull. Trephining was done, and a piece of the skull about half an inch in diameter was removed. No plate was inserted, and the wound so made is at present closed only by skin and flesh, and to some extent by new bone, which has grown in around the edges. It is in the front part of the left temple, near the outer corner of the eye, and represents an obvious indentation, which is at once apparent to anybody looking at that side of the petitioner's face. Through the opening in the skull the pulsation of the blood vessels in the brain can be felt. The petitioner's height is 5 feet 3 inches.

On June 29, 1917, the petitioner enlisted as a private in Battery E, First Maine Heavy Field Artillery, which at that time was part of the National Guard. It was then known that the National Guard would shortly be called into the federal service, and the petitioner enlisted with that expectation. The medical officer who examined and accepted him for service was Dr. J. G. Towne, who was then an officer of the Maine National Guard. About a year previous Mr. Blackington had had occasion in the course of his business to collect a debt from Dr. Towne's sister. Mr. Blackington does not appear to have done anything improper, or even out of the ordinary, in connection with the matter. Dr. Towne, however, conceived a violent animosity toward him, and said that he would get even with Blackington for annoying his sister; that he understood that Blackington was going to enlist in the Heavy Artillery, and, if Blackington did, he (Towne) would pass him if Blackington could not see beyond the end of his nose; and that he (Towne) would see to it that Blackington was passed by the federal medical examiner, etc.

The army regulations require that recruits for the arm of the service into which Mr. Blackington was enlisted should be not less than 5 feet 4 inches in height, and the statute itself requires them to be "effective and able-bodied men." R. S. § 1116 (Comp. St. 1916, § 1884). These requirements were known to Dr. Towne. He reported the petitioner's height as 5 feet 4¼ inches. The regulations also provide that "depressed fractures of the skull, particularly those of the motor region, usually cause rejection." This, too, was known to Dr. Towne; but he made no mention of the petitioner's head injury and paid no attention to it, except to press on it with his finger and inquire if the pressure caused pain. The petitioner was accepted for enlistment by Dr. Towne as "Recruiting Officer."

Within a day or two after the enlistment became complete, the petitioner consulted two other doctors upon the question whether he could safely perform military duty, especially near cannon in action, and was informed that he could not. From that time, he consistently endeavored to obtain his discharge from the service, but without success. The Maine regiment in which he originally enlisted was drafted into the United States Army on August 5th. Thereafter he was examined by the federal medical officers, and was accepted by them. Nothing whatever appears which casts any suspicion on the fairness of their examination, unless the remark by Dr. Towne, above quoted, be so regarded. No direct evidence was offered by the petitioner that his present physical condition is such that military service will cause more injury or hardship to him than to the average man. The single physician who testified, Dr. Hardy, expressed no opinion as to the petitioner's ability to do military work.

I saw no reason to reject as manifestly untruthful the testimony of the petitioner's witnesses as to Dr. Towne's statements; and he certainly reported the petitioner as being of the required height, when in fact the petitioner is an inch below it. Upon the petitioner's testimony a prima facie case is made that Dr. Towne was actuated by bias and hostility against him. If Dr. Towne was under any ob-

ligation to the petitioner to decide fairly the question whether the petitioner's height and physical ability to perform military service in heavy artillery were those called for by statute and army regulations, such obligation, upon the petitioner's evidence, was not met.

My attention has been called to nothing in the statutes or regulations imposing any such duty or obligation on the recruiting officer, and in my opinion none is created by implication of law. Voluntary enlistment rests on a contract between the recruit and the government. The contract is based on his offer of service and the acceptance of it by the military authorities. In making it, the parties deal at arm's length; neither occupies a fiduciary position towards the other; each looks out for his (or its) own interest. Whether the contract is binding is determined by the principles of law applicable to contracts generally. Duress, fraud, misrepresentation, avoid a contract of enlistment, as they would any other contract. In re Grimley, 137 U. S. 147, 11 Sup. Ct. 54, 34 L. Ed. 636.

The recruiting officer, or the medical examiner, acts solely for the state or for the United States. The purpose of the examination is not to give to the applicant assurance that he is physically fit for military service, but only to prevent undesirable men from getting into the army, where their presence would cause difficulty and expense. United States v. Cottingham, 1 Rob. (40 Va.) 615, 40 Am. Dec. 710. So, too, the army regulations governing recruiting are established for the good of the service, and may be waived by the military authorities. Such action is not a good ground of complaint by an applicant, not of the prescribed height, whose offer of service was nevertheless accepted. As to the effectiveness and bodily soundness, the army has the right to fix its own standards—if not absolutely, at least within much wider limits than are approached in this case. If Dr. Towne, in violation of his duty as an officer, accepted an unfit man, that was a matter for which he might be called to account by his military superiors; but it was nothing that a recruit passed by him could take advantage of, whether such action was inspired by personal hostility, or was the result of mere negligence.

In his application for enlistment Mr. Blackington stated that he was "physically qualified to perform the duties of an able-bodied soldier." It does not appear that he then believed this statement to be untrue, or had any suspicion that his old injury was likely to interfere with military service. The possibility that it might do so seems not to have been suggested to him until after his enlistment. Cases in which enlistment was procured by intentional misrepresentation on the part of the applicant—see Ex parte Dunakin (D. C.) 202 Fed. 290; United States v. Gibbon (C. C.) 24 Fed. 135—seem to me not applicable. But for the reasons stated I am of opinion that on his own evidence the petitioner is not entitled to be discharged.

An order may be entered, dismissing the petition, discharging the writ, and remanding the petitioner.