UNITED STATES, Appellee,

v.

Gregory W. WAGNER, Private, U. S. Army, Appellant.

No. 34,740.

CM 433607.

U. S. Court of Military Appeals.

Oct. 16, 1978.

Appearances: For Appellant—*Captain D. David Hostler* (argued); *Colonel Robert B. Clarke* (on brief); *Lieutenant Colonel John R. Thornock* ; *Major Benjamin A. Sims* (on brief); *Captain Steven J. McAuliffe.*

For Appellee—*Captain Lee D. Schinasi* (argued); *Colonel Thomas H. Davis* (on brief); *Lieutenant Colonel R. R. Boller* (on brief).

Opinion of the Court

FLETCHER, Chief Judge:

The appellant was found guilty contrary to his pleas, of the wrongful sale, transfer,

and possession of heroin, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934.[1] He was sentenced to a bad-conduct discharge, confinement at hard labor for two years, forfeiture of $300 pay per month for 24 months and reduction to the grade of E–1. The convening authority approved the sentence as adjudged. The United States Army Court of Military Review affirmed the findings of guilty but, finding error in the improper argument for sentence by the trial counsel, affirmed only so much of the sentence as provides for a bad-conduct discharge, confinement at hard labor for 18 months, and forfeiture of $300 pay per month for 18 months.

Prior to trial on the merits,[2] the appellant's defense counsel raised two motions for consideration by the military judge with respect to the jurisdiction of the court-martial to try the appellant as a person subject to the Uniform Code of Military Justice. First, he requested the presence of three witnesses, Staff Sergeant Martin C. Olds, the appellant's recruiter, Richard F. Baker, the appellant's civilian defense attorney for a felony charge in 1974 in the State of Michigan, and J. Richard Colbeck, the prosecuting attorney for this same civilian charge. Second, he moved to dismiss the military charge and specifications against the appellant on the ground that he was coerced into the United States Army at the time of his enlistment. Before deciding to act on either motion, the military judge considered documentary evidence and the testimony of the appellant concerning his enlistment. The military judge then ordered production of the defense requested witness, Sergeant Olds. He indicated that he would not require the production of the other two defense requested witnesses, but urged both counsel to contact these individuals and hopefully arrive at some stipulation of their testimony or of fact. At a later date (May 6, 1975) the proceedings on the motion continued. After introduction

by the defense of stipulations of testimony from the two previously denied defense witnesses, testimony by Sergeant Olds and further testimony from the appellant, the military judge denied the defense counsel's motion to dismiss. Defense counsel failed to renew his motion for the production of the other requested witnesses. The Army Court of Military Review found no error by the military judge in the denial of these two defense motions.

The appellant, before this Court, further contends that his enlistment was void because a felony charge was pending against him at the time of his enlistment and, accordingly, his enlistment was in contravention of applicable Army recruiting regulations. These regulations state in part that an applicant is *absolutely prohibited from enlisting if criminal or juvenile court charges by civil authorities are filed or pending against him.* AR 601–210, paragraph 4–11. Footnote 2 to Line 5 of Table 2–6 (c. 8, June 24, 1971), of this regulation also states that the following may not be enlisted:

Persons who, as an alternative to further prosecution, indictment, trial, or incarceration in connection with the charges, or to further proceedings relating to adjudication as a youthful offender or juvenile delinquent, are granted a release from the charges at any stage of the court proceedings on the condition that they will apply for or be accepted for enlistment in the Regular Army.

The Court of Military Review, in its unpublished opinion, made lengthy factual determinations with respect to the circumstances surrounding the appellant's enlistment. We believe these findings of fact are sufficiently based on the record of trial to be accepted by this Court to assist in the determination of the question of the validity of the appellant's enlistment for purposes of court-martial jurisdiction. *See United States v. Lightfoot,* 4 M.J. 262, 263

---

1. The appellant's court-martial took place on April 8, 1975, and May 6, 1975. Our decision in *United States v. Jackson,* 3 M.J. 101 (C.M.A. 1977), renders our holding in *United States v.*

*Courtney,* 1 M.J. 438 (C.M.A.1976), inapplicable to the present case.

2. Article 39(a), Uniform Code of Military Justice, 10 U.S.C. § 839(a).

**464**

(C.M.A.1978). The pertinent facts found by that court to be "essentially undisputed" are as follows:

> In support of his motion to dismiss for lack of jurisdiction the appellant testified that he had been arrested in Michigan in May of 1974 for carrying a concealed weapon in the trunk of his car. A week later he appeared in court on this felony charge, was arraigned, and provided with an appointed attorney. At a subsequent meeting, attended by this attorney, the appellant and his mother, the attorney indicated there was a possibility that he could arrange to have the charge dropped if the appellant were to join the Army. The attorney told appellant that he would check with the prosecutor concerning this option.
>
> The stipulated testimony of both the prosecuting attorney and the appellant's attorney, which was considered by the military judge on this issue, confirms that it was standard procedure in that county to give young men, who were charged with offenses not considered to be "heinous", the option of joining the Army in lieu of prosecution. The stipulations also point out that this program was conducted with a view toward helping these people and that there was no pressure to enlist exerted on them by the prosecutor.
>
> The local policy was followed in this case. Appellant further testified that the prosecution offered this type of arrangement to him through his counsel who suggested that he visit the recruiter in Coldwater, Michigan. The appellant indicated that he really did not wish to join the Army but that he did not want to risk going to jail either. Moreover, he stated that his parents were in favor of his enlisting to avoid having a criminal record.
>
> The appellant first appeared at the recruiting office on 23 May 1974 at which time a preliminary form was completed and arrangements were made for him to take the preenlistment mental examination on 30 May. He did not divulge the existence of the pending criminal charge during this initial visit to the recruiting office and there is no evidence that the recruiters were aware of it at that time. However, sometime after taking the mental examination on 30 May, the appellant told the recruiter, Staff Sergeant Olds, about the concealed weapon offense.
>
> At this point Sergeant Olds told the appellant that because of the regulations, he had no choice but to suspend processing of his enlistment application until such time as "the court took proper disposition on the case." Sergeant Olds further testified that he did not renew preparation of the paperwork necessary to enlist the appellant until after he received a phone call from the prosecuting attorney on 13 June indicating that the charge had been dropped. A letter confirming the fact that an "Order Nolle Prosequi" had been entered in the appellant's case was obtained and inserted in his file. The appellant entered active service on 18 June.
>
> In light of his action when first apprised of the pending charge, we accept as sincere and truthful the recruiter's repeated statements that he attempted to follow the letter of the regulations. Furthermore, we believe his testimony concerning the fact that he had no knowledge of the deal in this case or of any standing arrangement with either the prosecutor or appellant's defense attorney to enlist those under charges. Moreover, the appellant stated that, to the best of his knowledge, the judge who granted the prosecution's request to drop the charges had no idea of his enlistment in lieu of prosecution. Thus, we find that only the two attorney's and the appellant and family played an active and knowing role in this arrangement. (Footnotes omitted).

This Court granted the following issues for review:

WHETHER THE COURT–MARTIAL WHICH TRIED, CONVICTED, AND SENTENCED APPELLANT WAS WITHOUT JURISDICTION TO DO SO BECAUSE APPELLANT'S ENLIST-

MENT WAS THE RESULT OF COERCION AND RECRUITER MISCONDUCT, AND THEREFORE, VOID *AB INITIO*.

WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT BY DENYING A TIMELY DEFENSE REQUEST FOR THE PRESENCE OF TWO DEFENSE WITNESSES WHOSE TESTIMONY WAS CRUCIAL TO APPELLANT'S MOTION TO DISMISS THE CHARGES FOR LACK OF JURISDICTION.

I

■ Three separate but related questions are raised as a matter of fact and law in the appellant's challenge to his enlistment contract as a lawful basis for court-martial jurisdiction. Article 2(1), UCMJ, 10 U.S.C. § 802(1). The first issue is whether the appellant's enlistment contract should be considered void *ab initio* due to a purported lack of voluntariness as a matter of law and fact in his entrance into military service. *See United States v. Lightfoot, supra; United States v. Catlow*, 23 U.S.C.M.A. 142, 48 C.M.R. 758 (1974). The second question is whether there exists sufficient recruiter misconduct in the present case which smoothed the appellant's path to enlistment to void from the beginning his enlistment contract for purposes of court-martial jurisdiction. *See United States v. Russo*, 1 M.J. 134 (C.M.A.1975). The third question on the validity of the appellant's enlistment contract is whether his disqualification by a nonwaivable service regulation, even if undisclosed to the Government, constitutes "an inherent vice" in his military service to disable him from acquiring military status as a matter of enlistment contract law principles. *See In re Grimley*, 137 U.S. 147, 11 S.Ct. 54, 34 L.Ed. 636 (1890); *United States v. Catlow, supra*. The Court of Military Review assumed for purposes of its review, that the appellant's original enlistment was

void, but found jurisdiction on the basis of a constructive enlistment. We disagree with the holding of that court on the issue of constructive enlistment because there is no showing that this regulatory disqualification ceased to exist for the appellant.[3] Accordingly, we are constrained to evaluate the validity of the original enlistment contract of the appellant on all these grounds as a matter of law to determine its propriety as a basis for court-martial jurisdiction.

■ In *United States v. Lightfoot, supra*, we refused to extend the concept of involuntary enlistment contained in *United States v. Catlow, supra*, to those situations in which a criminal defendant, on the advice of counsel, instigates the proposal of military service as an alternate choice to confinement. In the present case, it is clear that the appellant's civilian lawyer, after consultation with him and his mother, initiated the alternative of military service to avoid further prosecution on the civilian charge. Moreover, this proposal was made to the prosecuting attorney prior to adjudication of his guilt on the felony charge and creation by the court of the "carrot and stick" situation in *United States v. Catlow, supra*. Finally, it is difficult for us to equate the local policy of the prosecutor's office in the appellant's case with the level of intimidation or improper influence proscribed in *United States v. Catlow, supra*. Accordingly, finding no good reason to reverse our recent decision in *United States v. Lightfoot, supra*, and insufficient facts as determined by the Court of Military Review to bring the circumstances of the appellant's case within the ambit of coercion prohibited in *United States v. Catlow, supra*, we conclude the appellant's enlistment was voluntary.[4]

■ The second argument attacking the original enlistment contract focuses on the purported misconduct of the recruiter in enlisting the appellant in violation of appli-

---

3. *United States v. Catlow*, 23 U.S.C.M.A. 142, 146, 48 C.M.R. 758, 762 (1974); *United States v. Overton*, 9 U.S.C.M.A. 684, 688, 26 C.M.R. 464, 468 (1958).

4. *In re Grimley*, 137 U.S. 147, 11 S.Ct. 54, 34 L.Ed. 636 (1890).

cable recruiting regulations.[5] In addressing the separate issue of constructive enlistment, the Court of Military Review declined to find negligence on the part of the recruiter in failing to inquire into the reasons underlying the cessation of the prosecution. Moreover, that court found that this recruiter did not know about, or participate directly or indirectly in, the arrangement between the prosecutor, the civilian defense attorney and appellant.[6] We find no deliberate violation of recruiting regulations to allow the enlistment of an ineligible applicant in the present case, nor any negligence on the part of the recruiter sufficient to justify voiding the appellant's original enlistment contract. Accordingly, there was no recruiter misconduct within the meaning of *United States v. Russo, supra*, which would require us on this ground to dismiss the charges against the appellant for lack of jurisdiction.

■ The final issue affecting the validity of the appellant's original enlistment contract revolves on his ineligibility for military service by reason of a nonwaivable regulatory disqualification.[7] The Court of Military Review found that it was uncontroverted that the appellant was not qualified for military service in accordance with this service regulation and we accept this fact for purposes of our review. The precise legal question before this court becomes whether this regulatory disqualification in and of itself voids[8] the original enlistment contract for purposes of court-martial jurisdiction. We believe the answer to this question can be found in the landmark case from the Supreme Court, *In re Grimley, supra*, which dealt with the effect of an undisclosed statutory disqualification for military service on an enlistment contract for purposes of habeas corpus relief.

In that case, the Supreme Court, as a matter of public policy, refused to void an enlistment contract where Grimley enlisted in the military without disclosing his true age of 40 years, which exceeded the statutory limits for enlistment in the military service.[9] In an opinion subject to varied interpretations,[10] the Court cited various contract law principles, military discipline considerations, and statutory interpretations, for refusing as a matter of public policy to allow Grimley to escape the responsibilities of his enlistment contract due to the fact of his being over age. We are mindful of the importance that the Supreme Court placed on the failure of Grimley to disclose his disqualification to the recruiter prior to enlistment.

By enlistment the citizen becomes a soldier. His relations to the state and the public are changed. He acquires a new *status*, with correlative rights and duties; and although he may violate his contract obligations, his *status* as a soldier is unchanged. He cannot of his own volition throw off the garments he has once put on, nor can he, the state not objecting, renounce his relations and destroy his *status* on the plea that if he had disclosed truthfully the facts, the other party, the state, would not have entered into the new relations with him, or permitted him to change his *status*. Of course these considerations may not apply where there is insanity, idiocy, infancy, or any other disability which, in its nature, disables a party from changing his *status* or entering into new relations. But where a party is *sui juris*, without any disability to enter into the new relations, the rule generally applies as stated.

*Id.* at 152–3, 11 S.Ct. at 55.

Moreover, we are particularly struck by the public policy considerations articulated by

---

5. *See* Footnote 2 to Line 5 of Table 2–6, Army Regulation 601–210, Personnel Procurement, Regular Army Enlistment Program (Change 8, June 24, 1971).

6. *Cf. United States v. Catlow, supra* at 143, 48 C.M.R. at 759; *see also United States v. Russo*, 1 M.J. 134 (C.M.A.1975).

7. *See* n. 5, *supra*.

8. *United States v. Blanton*, 7 U.S.C.M.A. 664, 23 C.M.R. 128 (1957).

9. Section 1116 (Revised Statutes U.S.).

10. *See* Casella, *Armed Forces Enlistment: The Use and Abuse of Contract*, 39 U.Chi.L.Rev. 783, 784 (1972).

the Supreme Court in 1890, which retain their viability in our mind with respect to our present day military situation. *See Schlesinger v. Councilman*, 420 U.S. 738, 757, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975). According to *Grimley*:

A naturalized citizen would not be permitted, as a defense to a charge of treason, to say that he had acquired his citizenship through perjury, that he had not been a resident of the United States for five years, or within the state or territory where he was naturalized one year, or that he was not a man of good moral character, or that he was not attached to the constitution. No more can an enlisted soldier avoid a charge of desertion, and escape the consequences of such act, by proof that he was over age at the time of enlistment, or that he was not able-bodied, or that he had been convicted of a felony, or that before his enlistment he had been a deserter from the military service of the United States. These are matters which do not inhere in the substance of the contract, do not prevent a change of *status*, do not render the new relations assumed absolutely void; and in the case of a soldier, these considerations become of vast public importance. While our regular army is small compared with those of European nations, yet its vigor and efficiency are equally important. An army is not a deliberative body. It is the executive arm. Its law is that of obedience. No question can be left open as to the right to command in the officer, or the duty of obedience in the soldier. Vigor and efficiency on the part of the officer, and confidence among the soldiers in one another, are impaired if any question be left open as to their attitude to each other. So, unless there be in the nature of things some inherent vice in the existence of the relation, or natural wrong in the manner in which it was established,

public policy requires that it should not be disturbed.

137 U.S. at 153, 11 S.Ct. at 55.

Yet, we are also conscious of the fact that the Supreme Court dealt with a statute which was determined to be waivable, for the benefit of the Government and without effect on the capacities of the parties to contract. In the case at bar, we are concerned with a regulatory recruiting disqualification which is for the benefit of the recruit [11] as well as the Government and which, on its face, is nonwaivable. Yet in *Grimley*, the Supreme Court also said:

On the other hand, suppose for any reason it could be contended that the proviso as to age was for the benefit of the party enlisting, is Grimley in any better position? The matter of age is merely incidental, and not of the substance of the contract. And can a party by false representations as to such incidental matter obtain a contract, and thereafter disown and repudiate its obligations on the simple ground that the fact in reference to this incidental matter was contrary to his representations? May he utter a falsehood to acquire a contract, and plead the truth to avoid it, when the matter . . is *for* his benefit? It must be noted here that in the present contract is involved no matter of duress, imposition, ignorance, or intoxication. Grimley was sober, and of his own volition went to the recruiting office and enlisted. There was no compulsion, no solicitation, no misrepresentation. A man of mature years, he entered freely into the contract.

*Id.* at 151, 11 S.Ct. at 54.

Our issue, accordingly, is narrowed to the legal effect of an enlistment, technically in violation of nonwaivable service regulations but where this fact was unknown to the Government at the time of enlistment.

In light of the considerations articulated by the Supreme Court, we do not find that the undisclosed violation of the Army recruiting regulations, in and of itself, is sufficient in the present case to void the appellant's enlistment contract.[12] In *United*

11. *United States v. Russo, supra; United States v. Catlow, supra.*

12. Though dicta in our opinion in *United States v. Lightfoot*, 4 M.J. 262, 263 n. 3 (C.M.A.1978), supports this conclusion, this precise question

*States v. Catlow, supra,* this Court concluded differently where a violation of this same regulation was found under circumstances we deemed coercive, and where the recruiter knew of the fact of the enlistee's regulatory disqualification. There, the enlistment was found void rather than voidable, not simply because the enlistment was in violation of a nonwaivable service regulation, but because the recruit's legal capacity to contract for military service was impermissibly curtailed by government coercion. *See United States v. Williams,* 302 U.S. 46, 58 S.Ct. 81, 82 L.Ed. 39 (1937); *United States v. Blanton,* 7 U.S.C.M.A. 664, 23 C.M.R. 128 (1957).

Admittedly some have chosen to read *Catlow* as holding that a nonwaivable regulatory disqualification in and of itself constitutes "an inherent vice", precluding under any circumstances the lawful military service of a person so disabled.[13] Such an enlistment in contravention of nonwaivable service regulations, even if unknown, would be categorized under all circumstances as unlawful and void *ab initio.* We disagree with this interpretation as too narrowly reading *United States v. Catlow, supra,*[14] and inconsistent with the public policy considerations enunciated in the Supreme Court's *Grimley* opinion.

■■■ In the first place, there exists no express statutory prohibition by Congress against an enlistment by a person who, through his civilian counsel, initiates a proposal of military service as an alternative to further prosecution for a civilian criminal offense. *See* 10 U.S.C. §§ 504, 505. Nor can the Congressional enactments concerning enlistment be reasonably construed to statutorily incapacitate the enlistee so disquali-

fied from contracting with the Government so as to require that his enlistment contract be declared void *ab initio.* *See United States v. Blanton, supra,* and *Bell v. United States,* 366 U.S. 393, 81 S.Ct. 1230, 6 L.Ed.2d 365 (1961). Likewise, absent a finding of involuntariness under these circumstances, this regulatory disqualification, unlike "insanity, idiocy, or infancy," does not render the contracting party "non sui juris" so as legally to disable him from changing his status or entering into new relations with the military as a matter of enlistment contract law principles enumerated in *Grimley.* *United States v. Williams, supra.* Moreover, public policy considerations inherent in the maintenance of a disciplined and effective military to protect society at large dictate against construing such a regulatory disqualification as inherent in the substance of the contract and requiring automatic voiding of the enlistment contract without some action of the appellant prior to the commission of the offense. *In re Morrissey,* 137 U.S. 157, 11 S.Ct. 57, 34 L.Ed. 644 (1890). Finally, since no matter of duress, imposition, ignorance or intoxication is involved in this enlistment, we find it extremely unreasonable to allow the appellant, like *Grimley,* to conceal his incidental disqualification at the time of the enlistment, and then assert it at a later date in bar of court-martial. *In re Grimley, supra.* We are of course aware that the services are required to strictly comply with their regulations, and the unknown violation of a regulation, if asserted in a timely manner, may require them to void the contract and release the recruit so disabled. *See United States v. Russo, supra.*

was not at issue in that case. In that Navy case, no regulation comparable to the Army regulation in the present case was alleged to have been violated, nor, as indicated in Judge Cook's opinion (concurring in the result), *supra* at 263–64, was any regulation found violated in *Lightfoot's* enlistment.

**13.** An example of this position is Judge Cook's opinion (concurring in the result) in *United States v. Lightfoot, supra.*

**14.** The cases from this Court relying on *Catlow* have not held that the violation of a regulation in and of itself voids the enlistment contract, but instead have relied on a combination of factors, the primary factor being coercion, in the invalidation of the enlistment contract. *See United States v. Dumas,* 23 U.S.C.M.A. 278, 49 C.M.R. 453 (1975), *United States v. Barrett,* 23 U.S.C.M.A. 474, 50 C.M.R. 493 (1975). *See also,* Dillof, *The Involuntary Volunteer: Coerced Military Enlistments,* 25 Am. U.L.Rev. 437, 453 (1976).

Yet, in the situation of a mere regulatory disqualification, absent such action by the appellant and prior to the commission of the offense, his enlistment contract remains merely voidable, and is a proper basis for court-martial jurisdiction. *See In re Morrissey, supra.* Though we construe *United States v. Catlow, supra,* to be primarily concerned with a lack of voluntariness on the part of the recruit, its interpretation as supporting void enlistments simply on the basis of a nonwaivable regulatory disqualification is deemed untenable. To do otherwise would subject the enlistment contract law principles announced in *Grimley* to the innumerable variables of the non-uniform regulations for enlistment of each service. We do not believe, that the violation of these regulations encompass in themselves an inherent vice, so contemplated by the Supreme Court, to automatically void an enlistment contract. Accordingly, the appellant's enlistment was valid for purpose of court-martial jurisdiction.

## II

The initial motion made by trial defense counsel requested the presence of three witnesses to testify to the circumstances surrounding the appellant's enlistment in the Army. After hearing testimony from the appellant and evaluating the defense requests for witnesses, the military judge ordered the production of the recruiter but denied the motion for the civilian prosecutor and the appellant's civilian defense counsel for the earlier civilian charges. There is no legitimate averment in the record of trial of the materiality of these two denied witnesses to put the military judge on notice that they may offer proof to negate the government's evidence or support the defense. *See United States v. Lucas,* 5 M.J. 167 (C.M.A.1978); *United States v. Iturralde-Aponte,* 1 M.J. 196, 198 (C.M.A.1975). Indeed, the stipulations of

testimony offered by the defense later in the court-martial provide no indication that such testimony would have been elicited from these witnesses on behalf of the defense. Under these circumstances, we are reluctant to conclude the military judge erred in denying this part of the appellant's motion.

The decision of the United States Army Court of Military Review is affirmed.

Judge PERRY concurs.

COOK, Judge *(concurring)*:

A recent ruling by the Judge Advocate General of the Navy, reported in "Off the Record"[1] invites reexamination of the correctness of some decisions by this Court in regard to recurrent problems of court-martial jurisdiction over the person of an accused. However, legislative inquiry into the matter may develop a better factual predicate for such reexamination. Accordingly, I am satisfied to approach the issue on the basis of past precedents.

Viewing the jurisdictional matter from the standpoint of our previous cases, I have, as the principal opinion notes, a different view of them than that of the majority. Even in my view, however, there is no violation of the enlistment regulation. As the opinion of the Court of Military Review indicates, the judge who dismissed the charge "had no idea of . . . [accused's] enlistment in lieu of prosecution." The literal language of the regulation was observed in that the accused was not released from civilian charges "on the condition that . . . [he] apply for or be accepted for enlistment." I agree, therefore, that the court-martial had jurisdiction over the accused. I also agree there is no merit in his attack on the trial judge's ruling as to the requested witnesses. Consequently, I join in affirming the decision of the Court of Military Review.

---

1. "Off the Record", Department of the Navy, Office of the Judge Advocate General, No. 72, 13 March 1978, at 132. In material part the Judge Advocate General said: "The decisions of the Court of Military Appeals are dispositive as to matters reasonably comprehended within the provisions of the Uniform Code of Military Justice. *McPhail v. United States* . . . . The UCMJ, however, has no application to enlistments in the naval or military service." *Id.* at 135.