UNITED STATES, Appellee,

v.

Geronimo V. VALADEZ, Jr., Private, U. S. Marine Corps.

No. 34,837.
NCM 77–0909.

U. S. Court of Military Appeals.

Oct. 16, 1978.

Appearances: For Appellant—*Lieutenant Lawrence W. Muschamp*, JAGC, USNR (argued).

For Appellee—*Captain Geoffrey D. Fallon*, USMCR (argued); *Lieutenant Commander N. P. DeCarlo*, JAGC, USN (on brief); *Lieutenant Michael C. Farrow*, JAGC, USNR.

Opinion of the Court

FLETCHER, Chief Judge:

In accordance with his pleas, the appellant was found guilty, at a special court-martial, of two specifications of disrespect and one specification of assault, all directed to the same superior noncommissioned officer, in violation of Article 91, Uniform Code of Military Justice, 10 U.S.C. § 891. The military judge sentenced the appellant to a bad-conduct discharge as well as confinement at hard labor and forfeiture of $248 pay per month, both for a period of five months. The convening authority approved the sentence, but, in accordance with a pre-trial agreement, deferred execution of for-

feitures and the unserved portion of confinement until completion of appellate review. The United States Navy Court of Military Review affirmed the findings and sentence as approved on review by the convening authority.

At the appellant's court-martial, his trial defense counsel made a motion to dismiss the charge and specifications against him on the ground of lack of jurisdiction over his person. Relying on *United States v. Russo*, 1 M.J. 134 (C.M.A.1975), and in particular *United States v. Little*, 1 M.J. 476 (C.M.A.1976), he contended that the local recruiter provided the appellant with answers to the Armed Forces Qualification Test so as to effect an enlistment of a mentally ineligible person for military service. After hearing testimony from the appellant and the recruiter, and considering documentary evidence concerning the appellant's enlistment, the military judge denied the motion. In special findings of fact, he concluded that the standard operating procedure of providing the recruit with a "commercially prepared" booklet to assist him in preparing for the examination was not unlawful so as to require the voiding of the appellant's enlistment in accordance with the aforementioned cases.

On appeal before the Court of Military Review, his appellate defense counsel further attacked[1] the validity of the appellant's conviction on jurisdictional grounds distinguishable from that presented at trial. He asserted that the appellant was disqualified for enlistment in the Marine Corps by non-waivable service regulations.[2] In light of the appellant's age and his failure to graduate from high school, these regulations specifically required that he attain a score of 50 in his entrance test, rather than the otherwise satisfactory score of 40 he in fact received. Counsel argued that since this disqualification was apparent on the face of the appellant's enlistment contract, the government's[3] gross and culpable negligence in allowing the appellant's enlistment should void this contract under the rationale of *United States v. Russo, supra*, and effectively preclude the establishment of any other jurisdictional basis for the appellant's court-martial.

The Navy Court of Military Review, in its opinion, addressed this particular jurisdictional attack as follows [3 M.J. 1087, 1089 (NCMR 1977)]:

At the outset, we reject appellant's contention under Assignment of Error III that the trial court erred as a matter of law in denying the motion to dismiss for want of jurisdiction. However, with regard to the third assignment the Government admits that on the day appellant enlisted he took the AFQT and failed to attain the score of 50, required for a person seventeen years of age who had not graduated from high school; thus, an impediment to a valid enlistment existed. The Government states such an impediment will render the enlistment void, citing *United States v. Walley*, 76 1001 (NCMR 15 Sept. 1976). The Government also contends that simple negligence on the part of recruiting officials will not preclude subsequent jurisdictional reliance upon a constructive enlistment, citing *United States v. Russo*, 23 U.S.C.M.A. 511, 50 C.M.R. 650, 1 M.J. 134 (1975). We concur.

---

1. The appellate defense counsel in his thorough brief also challenged the adequacy of the review by the staff judge advocate and the factual basis of the military judge's special findings on jurisdiction; he also made additional argument on recruiter misconduct on the basis of *United States v. Little*, 1 M.J. 476 (C.M.A.1976). These attacks on the appellant's conviction as well as the propriety of the ruling of the military judge in response to the trial defense counsel's particular motion to dismiss are not granted issues for review before this Court on this appeal.

2. *See* Marine Corps Order 5310.2J, para. 5(a)(1) (17 May 1972). *See also* Military Personnel Procurement Manual, Volume 4, Enlisted Procurement, Section 2011, paragraph 1c.

3. The record of trial indicates a recruiting official other than the appellant's original recruiter was responsible for reviewing the appellant's qualifications for enlistment after his Armed Forces Qualification Test at the Armed Forces Entrance Examination Station. In any event, we find this negligence chargeable to the Government for purpose of court-martial jurisdiction.

Appellant evidently knew nothing of his impediment to valid enlistment, inasmuch as he thought he had passed the test. (R. 15). There certainly was no attempt by the Government to conceal appellant's disqualification in view of the fact that the test score was plainly entered in the appropriate block of the enlistment contract. The evidence clearly supports a finding that appellant's entry into the armed service was the result of an act of simple negligence on the part of recruiting officials in failing to recognize that the combination of factors present (i. e., no high school diploma, age, and test score) rendered appellant ineligible for enlistment. We therefore conclude that in this case simple negligence on the part of recruiting officials did not preclude the subsequent development of a constructive enlistment.

This Court granted review on the following issue:

WHETHER GROSS AND CULPABLE NEGLIGENCE BY RECRUITMENT PERSONNEL IS SUFFICIENT UNDER *UNITED STATES V. RUSSO*, 23 U.S.C. M.A. 511, 50 C.M.R. 650, 1 M.J. 134 (1975) TO QUALIFY AS RECRUITER MISCONDUCT AND TO VOID AN ENLISTMENT.

We have reviewed the record of trial and conclude, as did the Court of Military Review, that simple, rather than gross and culpable, negligence occurred in this case.[4] Accordingly, this issue for review is so modified.[5]

WHETHER SIMPLE NEGLIGENCE BY GOVERNMENT AGENTS IN ENLISTING AN INELIGIBLE RECRUIT FOR MILITARY SERVICE IS SUFFICIENT UNDER *UNITED STATES V. RUSSO*, 1 M.J. 134 (C.M.A.1975), TO VOID HIS ORIGINAL ENLISTMENT CONTRACT AND PRECLUDE THE EXERCISE OF

COURT–MARTIAL JURISDICTION OVER HIS PERSON.

I

At the outset it must be noted that this Court has never held a violation of service regulations which embraces an undisclosed regulatory disqualification in and of itself voids from its inception an enlistment contract for purposes of court-martial jurisdiction. *See United States v. Wagner*, 5 M.J. 461 (C.M.A.1978); *United States v. Lightfoot*, 4 M.J. 262 (C.M.A.1978). We believe such a regulatory violation may provide standing for an enlistee to attempt to void his enlistment contract in the proper forum. *See Mellinger v. Laird*, 439 F.Supp. 434, 439 (E.D.Pa.1972). *See also United States v. Russo, supra*. Nevertheless, the enlistment contract remains merely voidable, and a valid basis for court-martial jurisdiction, until the recruit takes action to void the contract, prior to his commission of an offense and action taken by the Government with a view towards trial. *See In Re Morrissey*, 137 U.S. 157, 11 S.Ct. 57, 34 L.Ed. 644 (1890). *See also United States v. Bean*, 13 U.S.C.M.A. 203, 207, 32 C.M.R. 203, 207 (1962). It is only when the recruiting regulation also amounts in fact and law to either a lack of voluntariness, a statutory incapacity to contract, or a disability embraced within the enlistment contract principles intimated by the Supreme Court in the case of *In Re Grimley*, 137 U.S. 147, 11 S.Ct. 54, 34 L.Ed. 636 (1890), will such a disqualification be found sufficient to void the enlistment contract *ab initio* as a basis for court-martial jurisdiction. *See United States v. Wagner, supra*. Accordingly, the appellant's enlistment contract should not be considered void simply because his score of 40 rendered his enlistment in violation of a particular service regulation. *Cf. United States v. Catlow*, 23 U.S.C.M.A. 142, 48

4. *See* paragraphs 171c and 213f(12), Manual for Courts-Martial, United States, 1969 (Revised edition). There is also sufficient evidence in the record of trial to support the factual findings of the Court of Military Review on this issue. *See United States v. Lightfoot*, 4 M.J. 262 (C.M.A.1978).

5. Our review of the appellate briefs and authorities cited therein as well the oral arguments in this case make it unnecessary to order further briefs on the modified issue.

C.M.R. 758 (1974). The reliance of the United States Navy Court of Military Review on *United States v. Walley*, NCMR 76-1001 (September 15, 1976) (unpublished), for a contrary conclusion is, therefore, misplaced.[6]

■ The Court of Military Review and appellate counsel have incorrectly assumed in the present case that the appellant's enlistment contract was, as a matter of law, void *ab initio* by reason of "non-compliance" with service regulations. Consequently, they proceeded to view this jurisdictional question from the perspective of the degree of government negligence sufficient to preclude the use of the doctrine of constructive enlistment. Opposing counsel offer various analyses of the *Russo* decision to establish public policy considerations[7] supporting or precluding the use of the constructive enlistment doctrine in the case of simple or gross negligence by government agents. We suggest our decision in *United States v. Brown*, 23 U.S.C.M.A. 162, 48 C.M.R. 778 (1974), is the touchstone for determining the measure of recruiter misconduct which, as a matter of fairness, prevents the Government from relying on a constructive enlistment to acquire personal jurisdiction over an accused. Moreover, the constructive enlistment doctrine appears inapplicable in the present case since there was no showing by the Government that the condition of regulatory disqualification for the appellant was ever cured. *See United States v. Catlow, supra.* In any event we consider this enlistment contract to be merely voidable as a result of the regulatory ineligibility of the appellant. *United States v. Wagner, supra.* Accordingly, the issue in this case is the legal effect, if any, on the original enlistment contract, of negligence by government agents which causes such a regulatory disqualification to remain undisclosed and permits such a person to enter military service.

In the case of *United States v. Russo, supra* at 137 (footnote omitted), this Court unanimously held:

> Because fraudulent enlistments are not in the public interest, we believe that common law contract principles[7] appro-
>
> [7] *See, e. g., Steele v. Drummond*, 275 U.S. 199, 48 S.Ct. 53, 72 L.Ed. 238 (1927); *Burck v. Taylor*, 152 U.S. 634, 14 S.Ct. 696, 38 L.Ed. 578 (1894); *Marshall v. Baltimore & Ohio R. Co.*, 57 U.S. (16 How.) 314, 14 L.Ed. 953 (1853).
>
> priately dictate that where recruiter misconduct amounts to a violation of the fraudulent enlistment statute, as was the situation here, the resulting enlistment is void as contrary to public policy. Hence the change of status alluded to in *Grimley* never occurred in this case.

In the case at bar, enlistment conduct amounting to simple negligence by government agents other than the original recruiter was found to have smoothed the path to appellant's enlistment, though he was disqualified by applicable service regulations. We believe that the validity of this enlistment contract, so procured, as a basis for court-martial jurisdiction must be tested under the same enlistment contract law principles which, as a matter of public policy, rendered *Russo's* enlistment contract void *ab initio*.

■ Despite scholarly suggestions for a more realistic view of the phenomenon known as enlistment,[8] it has been generally held, as a matter of federal case law,[9] that certain contract law principles are applica-

---

6. For general background on the effect of regulatory violations on government contracts in the civilian sector, *see* Shedd, *The Christian Doctrine, Force and Effect of Law, and Effect of Illegality on Government Contracts*, 9 Public Contract L.J. 1–31 (June 1977).

7. Despite the salutary or beneficial effects which our decision in *United States v. Russo*, 1 M.J. 134 (C.M.A.1975), may have had on re-

cruiting practices, its primary concern was not to punish recruiters for violations of Article 84, Uniform Code of Military Justice, 10 U.S.C. § 884, by voiding enlistment contracts.

8. Casella, *Armed Forces Enlistment: The Use and Abuse of Contract*, 39 U.Chi.L.Rev. 783 (Summer 1972).

9. *United States v. Standard Oil Co.*, 332 U.S. 301, 305, 67 S.Ct. 1604, 91 L.Ed. 2067 (1947).

ble to enlistment contracts.[10] Moreover, as clearly indicated in the *Grimley* decision, the Supreme Court has relied heavily on public policy considerations[11] when enlistment contracts are challenged as being void *ab initio* due to ultra vires actions of the Government or its agents in enlisting an unqualified recruit.[12] In the present case, there appears to be no question of a lack of capacity to contract, a lack of voluntariness, or any inherent vice in the military service of the appellant involved in his enlistment. *See United States v. Wagner, supra.* Accordingly, the issue becomes whether there are any other circumstances surrounding the formation of this enlistment contract which would justify this Court in setting it aside as being void *ab initio. See In Re Grimley, supra,* 137 U.S. at 157, 11 S.Ct. 54. More particularly, is the simple negligence which procured the appellant's enlistment contract so contrary to public policy as to require this Court to refuse to recognize this enlistment contract as a valid basis for court-martial jurisdiction? We hold that it is not.

We believe this conclusion is consistent with our holding in *United States v. Russo, supra,* and justified by the decision of the Supreme Court in *In Re Grimley, supra.* In *Marshall v. Baltimore & Ohio R. Co.,* 57 U.S. (16 Howard) 314, 334, 14 L.Ed. 953 (1853), a case expressly relied on in our decision in *Russo,* the Supreme Court said:

It is an undoubted principle of the common law, that it will not lend its aid to enforce a contract to do an act that is illegal; or which is inconsistent with sound morals or public policy; or which tends to corrupt or contaminate, by improper influences, the integrity of our social or political institutions.

Accordingly, we relied on Article 84, UCMJ, 10 U.S.C. § 884, as an expression of public policy by Congress that enlistment contracts for military service by ineligible applicants, procured with knowledge of a government agent, were not in the public interest and void as contrary to public policy. *See Burck v. Taylor,* 152 U.S. 634, 648–49, 14 S.Ct. 696, 38 L.Ed. 578 (1894). Nevertheless, cognizant of the delicacy required when construing public policy expressions from a congressional enactment, we limited our holding voiding enlistment contracts under this common law contract principle to clear cases of impropriety by government agents which amounted to a violation of a criminal statute whose dominant public interest was to preserve the integrity of the enlistment process. *See Steele v. Drummond,* 275 U.S. 199, 204–06, 48 S.Ct. 53, 72 L.Ed. 238 (1927).

We find further that this reasoning and the result reached in *United States v. Russo, supra,* take into consideration the enlistment contract law principles specifically enunciated and those implied by the Supreme Court in the *Grimley* case. In *Grimley,* the Supreme Court expressly dealt with an enlistment contract which was executed without the aid of active misconduct of a recruiter or government agent. Yet the Supreme Court said (137 U.S. at 151, 11 S.Ct. at 55):

It must be noted here that in the present contract is involved no matter of duress, imposition, ignorance, or intoxication. Grimley was sober, and of his own volition went to the recruiting office and enlisted. *There was no compulsion, no solicitation, no misrepresentation.* A man of mature years, he entered freely into the contract. (Emphasis supplied.)

Moreover, the Supreme Court envisioned other situations where public policy might require that a court void an enlistment contract (*id.* at 153, 11 S.Ct. at 55):

---

**10.** *See In Re Grimley,* 137 U.S. 147, 11 S.Ct. 54, 34 L.Ed. 636 (1890); *In Re Morrissey,* 137 U.S. 157, 11 S.Ct. 57, 34 L.Ed. 644 (1890); *Bell v. United States,* 366 U.S. 393, 81 S.Ct. 1230, 6 L.Ed.2d 365 (1961). *See also Ex Parte Blackington,* 245 F. 801 (D.Mass.1917), aff'd on other grounds, *Blackington v. United States,* 248 F. 124 (1st Cir. 1918).

**11.** The public policy concerns surrounding this issue are articulated in our recent decision of *United States v. Wagner,* 5 M.J. 461 (C.M.A. 1978).

**12.** This strict statutory authority analysis was accepted by a Circuit Court of Appeals. *See In Re Grimley,* 38 F. 84 (Cir.Ct.Mass.1889). Yet the Supreme Court in its own decision on the same case declined to follow such reasoning.

So, unless there be in the nature of things some inherent vice in the existence of the relation, or natural wrong in the manner in which it was established, public policy requires that it should not be disturbed. In light of all these considerations, it is inconceivable to us that any court would enforce an enlistment contract for purposes of court-martial jurisdiction where the Government knowingly enlisted a recruit in violation of Article 84, UCMJ. *See also United States v. Burden*, 1 M.J. 89 (C.M.A. 1975).

Now, it is beyond cavil that negligence by a recruiter or other government agents in enlisting an applicant not qualified for military service by applicable service regulations is not in the best interests of the public, the military, or the recruit. *See United States v. Russo, supra; United States v. Catlow, supra.* Indeed, it might be argued that simple negligence by members of the military was punishable at a court-martial as a violation of Article 92(3), UCMJ, 10 U.S.C. § 892(3). *See* Paragraph 171c, Manual, *supra.*[13] In any event, as stated earlier, the full breadth of the enlistment contract law principles articulated in *Grimley* and *Russo* must be considered to arrive at the delicate public policy interpretation of the legal effect of a contract so procured on court-martial jurisdiction.

This Court is hesitant to read Article 92(3), UCMJ, and the obfuscatious Manual provision defining military criminal negligence as a clear expression of public policy by Congress that an enlistment contract procured through simple negligence should be considered void *ab initio. See Steele v. Drummond, supra.* Likewise, we find it unreasonable to attribute to an act of simple negligence, even if a violation of Article 92(3), a sufficient degree of impropriety, as in the case of deliberate fraud, which would corrupt the military in its enlistment function or sully this Court's integrity by enforcing such contracts. *See Marshall v. Baltimore & Ohio R. Co., supra.* Moreover, we can hardly classify simple negligence as a natural wrong in the manner of the establishment of an enlistment contract, or conduct on the level of compulsion, solicitation or misrepresentation condemned by implication in *Grimley.* Finally, we believe that the interest of the primary society in an effective and disciplined fighting force significantly outweighs any possible concern on its part with an enlistment of an ineligible recruit inadvertently caused by simple negligence. *See In Re Grimley, supra; Schlesinger v. Councilman*, 420 U.S. 738, 757, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975).

Accordingly, we are constrained by the preceding considerations to answer the modified question on review in the negative, and to find the jurisdiction of the court-martial lawful in the appellant's case. This holding should not be construed as a bar to an ineligible recruit from attempting to void his enlistment contract on this or other grounds in the appropriate forum prior to the commission of an offense and action leading to court-martial. *See In Re Morrissey, supra.* Moreover, it is conceivable that negligence of a higher degree, *e. g.,* wanton and willful, which is employed to avoid discovering recruiting disqualifications, coupled with the existence of such a regulatory disqualification, may be sufficient recruiter misconduct to justify declaring an enlistment contract so procured void *ab initio* for purposes of court-martial jurisdiction. *See United States v. Little, supra.* Finally, the above reasoning is not particularly applicable where the regulation violated embraces a denial of due process in the enlistment process rather than a mere regulatory disqualification. *See United States v. Kilbreth*, 22 U.S.C.M.A. 390, 47 C.M.R. 327 (1973).

The decision of the United States Navy Court of Military Review is affirmed.

Judge PERRY, concurs.

Judge COOK, concurs in the result.

---

**13.** The consideration of this hypothesis is solely for the purpose of legal analysis of the validity of an enlistment contract as a basis for court-martial jurisdiction. It is not intended to imply that the recruiter in this case violated Article 92(3), UCMJ, 10 U.S.C. § 892(3), or to offer any support for the proposition that simple negligence, as a matter of fact and law, is alone sufficient to constitute a violation of said statute.