UNITED STATES

v.

Randy J. ROBBINS, 193 42 7570, Personnelman Seaman Apprentice (E–2), U. S. Naval Reserve.

NCM 77 2129.

U. S. Navy Court of Military Review.

22 Nov. 1978.

LT Vance J. Bettis, JAGC, USNR, Appellate Defense Counsel.

LT Richard A. Joyce, JAGC, USNR, Appellate Government Counsel.

Before GREGORY, GLADIS and GRANGER, JJ.

GLADIS, Judge:

The accused stands convicted, contrary to his pleas, of seven unauthorized absences and disobedience of a lawful order, in violation of Articles 86 and 92, Uniform Code of Military Justice, 10 U.S.C. §§ 886 and 892. The approved sentence, as the case reaches us, consists of a probationally suspended bad-conduct discharge, confinement at hard labor for 2 months, forfeiture of $240 per month for 2 months, and reduction to pay grade E–1.

The accused contends, among other things, that his court-martial lacked *in personam* jurisdiction because of recruiter misconduct involving his enlistment. We agree, finding that the Government failed

to meet its burden of establishing jurisdiction. The unrebutted testimony of the accused revealed that the recruiter intentionally enlisted him without obtaining the necessary waiver, knowing that appellant was ineligible for enlistment without a waiver of his juvenile record.

We accept the accused's unrebutted testimony that he informed the recruiter of his juvenile record and was advised by the recruiter to conceal it. We find that the accused was not on probation at the time of his enlistment. The accused was, however, ineligible to enlist without a waiver of his juvenile record, and the recruiter was aware of his disqualification.

 The necessary predicate for *in personam* court-martial jurisdiction is the military status of the accused. The prerequisite to effect a change in status from civilian to military is a valid enlistment contract or a legitimate constructive enlistment. *United States v. Russo*, 1 M.J. 134 (C.M.A. 1975). An enlistment which does not conform with applicable recruiting statutes and regulations, standing alone, is not void, that is, the requisite change in status may be effected although the enlistment is contrary to regulations. *See United States v. Lightfoot*, 4 M.J. 262 (C.M.A.1978), citing *In re Grimley*, 137 U.S. 147, 11 S.Ct. 54, 34 L.Ed. 636 (1890). Where, however, a recruiter knowingly enlists or aids in enlisting an individual who has given timely notice that he is disqualified for military service, the enlistment is void and fairness prevents the Government from relying on a constructive enlistment. *United States v. Russo, supra. See United States v. Valadez*, 5 M.J. 470, 475 (C.M.A.1978); *United States v. Harrison*, 5 M.J. 476, 479 (C.M.A.1978). The Government may not knowingly violate its own regulations by entering into illegal enlistment contracts and then, subsequently,

rely upon the change of status doctrine as a shield to avoid judicial scrutiny. Fraudulent enlistments are not in the public interest. Clearly, where recruiter misconduct amounts to a violation of the fraudulent enlistment statute, the resulting enlistment is void as contrary to public policy.[1] When the issue is raised, the Government has the burden of affirmatively establishing jurisdiction.

The Government contends that it may rely upon a constructive enlistment because the recruiter did not knowingly enlist an individual who was disqualified; the accused was not absolutely disqualified from enlisting but could have enlisted had the necessary waiver been obtained.[2] The evidence shows, however, that the recruiter knew the accused was ineligible to enlist without a waiver and, regardless, intentionally enlisted him without obtaining one. Although the accused would have been eligible had a waiver been obtained, he was ineligible when he enlisted because the waiver had not been obtained and the applicable regulation prohibited enlistment without it. Under the circumstances, the recruiter's conduct was tantamount to a violation of Article 84, Uniform Code of Military Justice, the fraudulent enlistment statute. The holding of *Russo*, reaffirmed in *Valadez*, both *supra*, is that where recruiter misconduct amounts to a violation of the fraudulent enlistment statute, common law contract principles dictate that the resulting enlistment is void. The Court of Military Appeals makes no distinction between intentional enlistment of an individual who is disqualified by reason of an absolute bar to enlistment and of one who is disqualified because a required waiver has not been obtained. In each instance there is recruiter misconduct amounting to a violation of the fraudulent enlistment statute and the

---

1. Conceivably wanton and willful recruiter negligence, which does not amount to a violation of Article 84, UCMJ, 10 U.S.C. § 884, but results in the enlistment of an ineligible, will void an enlistment and preclude the Government from relying on a constructive enlistment. *United States v. Valadez, supra; United States v. Harrison, supra.*

2. This Court has previously found no jurisdiction in cases in which recruiters knowingly enlisted applicants who were disqualified for enlistment unless waivers were obtained. *United States v. Sanchez*, No. 77 1262 (9 November 1977) (unpublished); *United States v. Holloway*, No. 77 0159 (2 August 1977) (unpublished).

enlistment is void. In this case the enlistment is void and the Government is precluded from relying on a constructive enlistment as a predicate for jurisdiction.

The findings of guilty and sentence are set aside. The charges are dismissed.

Senior Judge GREGORY concurs.

GRANGER, Judge (dissenting):

I consider the majority decision to be an unwarranted and undesirable expansion of the principles enunciated in *United States v. Russo*, 1 M.J. 134 (C.M.A.1975). I would find that the court-martial had jurisdiction to try this service member, and I would affirm his conviction.

The evidence leaves no doubt that appellant enlisted in the Navy in 1974. There is no contention that he lacked capacity to contract, or that his enlistment was not voluntary. The issue then becomes whether there are any circumstances surrounding appellant's enlistment that would require the court-martial to declare the enlistment void *ab initio. See United States v. Valadez*, 5 M.J. 470 (C.M.A.1978).

Appellant's recruiter advised him to conceal his record of juvenile misconduct. This juvenile record did not constitute a bar to appellant's enlistment but was merely a deficiency that was waivable at the pleasure of the Government. I do not concur with the majority that such recruiter misconduct vitiates an otherwise valid enlistment.

I first part company with my colleagues when they hold that the recruiter misconduct in this case amounts to a violation of the fraudulent enlistment statute.

Historically, fraudulent enlistment has been defined as:

[A]n enlistment procured by means of a wilful misrepresentation in regard to a qualification or disqualification for enlistment, or by an intentional concealment of a disqualification, which has the effect of causing the enlistment of a man not qualified to be a soldier, *and who, but for such false representation of concealment, would have been rejected.* [Emphasis added.] [W. Winthrop, *Military Law and Precedents* 734 (2nd edition reprint)].

In determining in a given case whether or not an enlistment is fraudulent in violation of Article 83, Uniform Code of Military Justice, "The answer depends upon whether the concealed fact *would have operated as a bar"* to entry into the military service. [Emphasis added.] *United States v. Danley*, 21 U.S.C.M.A. 486, 45 C.M.R. 260 (1972), *see also United States v. Holloway*, 18 C.M.R. 909 (A.B.R.1955).

As this Court stated in *United States v. Loyd*, 7 C.M.R. 453, 454 (N.B.R.1953):

To support a conviction under Article 83(1), UCMJ, it must be shown that the false representation made, or the deliberate concealment of fact, was intentional on the part of the accused; and further, it must be shown that the enlistment would not have been procured except for and by reason of the false representation or deliberate concealment. 'In all cases, where an individual procures his enlistment in the naval service by means of a wilful misrepresentation in regards to a material fact, *which misrepresentation results in an enlistment which otherwise would have been rejected,* and . . .' (C.M.O. 10, 1924, 4. Italics supplied.) 'The gist of the offense of fraudulent enlistment is the concealment of a fact *knowingly and willfully, which, if known to the recruiting officer, would cause the rejection* of the applicant.' (C.M.O. 92, 1918, 21. Italics supplied.)

In the instant case, appellant's juvenile record did not constitute a bar to appellant's enlistment but was merely a waivable defect. It follows that appellant could not be convicted of fraudulent enlistment, and his recruiter could not be convicted of effecting a fraudulent enlistment. No fraudulent enlistment statute was violated.

In reaching this conclusion, I cannot be credited with innovative legal analysis or great imagination, because my course was unerringly charted in *United States v. Miller*, No. 78 0246 (N.C.M.R. 24 July 1978), where, confronted with the same facts, we

reached precisely this same conclusion. There we said:

Accepting the truth of appellant's assertions, appellant was not barred from enlistment, as his juvenile record did not render him ineligible for military service. Thus, the alleged recruiter misconduct did not effect a fraudulent enlistment as proscribed in Article 84, Uniform Code of Military Justice. *Cf. United States v. Russo*, 23 U.S.C.M.A. 511, 50 C.M.R. 650, 1 M.J. 134 (1975).

*See also* the principal opinion in *United States v. Westphal*, No. 77 1259 (N.C.M.R. 23 November 1977); *United States v. Hightower*, 5 M.J. 717 (A.C.M.R.1978); *United States v. Gonzalez*, 5 M.J. 770 (A.C.M.R. 1978).

The majority, therefore, inappropriately relies upon *United States v. Russo, supra.* That case, and all the Court of Military Appeals' decisions following it, involve recruiter connivance in the enlistment of individuals absolutely barred from military service. In *Russo*, the Court stated that, because fraudulent enlistments are not in the public interest, common law principles dictate that where recruiter misconduct amounts to a violation of the fraudulent enlistment statute the enlistment is void as contrary to public policy. That principle does not control this case, in which the enlistee suffers no impediment that bars his enlistment. Thus the majority opinion expands the principle enunciated in *Russo* to encompass recruiter misconduct resulting in the enlistment of persons with waivable defects.

In interpreting *Russo*, too much attention has been focused on "recruiter misconduct" and not enough upon "public policy." No one questions that recruiter misconduct should be purged from the enlistment process. Certainly, voidance *ab initio* of any enlistment tainted by recruiter misconduct will have that cathartic effect. But that is an uncommonly harsh remedy, and it is not a remedy that has been prescribed thus far by the Court of Military Appeals. Discussing *Russo* in *United States v. Valadez, supra*, the higher Court acknowledge that,

despite the salutary or beneficial effects the *Russo* decision may have had on recruiting practices, its primary aim was not to punish recruiters for their misconduct by voiding enlistment contracts. *Id.* at 473, n. 7. The thrust of *Russo*, insofar as it pertains to recruiter misconduct, is that the Court of Military Appeals will not recognize an enlistment that was contracted contrary to a clear pronouncement of public policy. Thus, the Court did not state that any recruiter misconduct voids an enlistment contract *ab initio*. That harsh remedy was reserved in *Russo* for only those "clear cases of impropriety by government agents which amounted to a violation of a criminal statute whose dominant public interest was to preserve the integrity of the enlistment process." *United States v. Valadez, supra* at 474. The only statute the higher Court was referring to in *Russo* was Article 84, Uniform Code of Military Justice. There was no violation of Article 84 in this case.

Therefore, if this enlistment contract is void under the theory that it is contrary to public policy, the pronouncement of that public policy must be found elsewhere than in Article 84, Uniform Code of Military Justice.

It may reasonably be argued that violation of or failure to obey any recruiting regulation is contrary to public policy. Indeed, one may rationalize that violation of any orders by any member of the armed forces is contrary to public policy, because it is public policy that members of the armed forces do what they are told, in order that this nation maintain an efficient, dependable and responsive military arm. The same goal, however, militates against permitting malcontents to voluntarily enter into military service, wear the uniform, and receive the benefits and remuneration of a service member, but not be subject to the disciplinary sanctions necessary to sustain an effective armed force. Permitting miscreant "service members" to violate the law with impunity—the ultimate result of the *Russo* rationale—is also *contra* to public policy.

But these generalized notions of what is in the public interest are not the clear pro-

nouncements of public policy upon which the *Russo* principle is premised. As recognized in *Steele v. Drummond*, 275 U.S. 199, 205, 48 S.Ct. 53, 54, 72 L.Ed. 238, 240 (1927), a case relied upon in *Russo* and *Valadez*:

It is only because of the dominant public interest that one, who has had the benefit of performance by the other party, is permitted to avoid his own obligation on the plea that the agreement is illegal. And it is a matter of great public concern that freedom of contract be not lightly interfered with. [Citations omitted.] The meaning of the phrase "public policy" is vague and variable; there are no fixed rules by which to determine what it is. It has never been defined by the courts, but has been left loose and free of definition, in the same manner as fraud. [Citations omitted.] It is only in clear cases that contracts will be held void. The principle must be cautiously applied to guard against confusion and injustice. [Citations omitted.]

The Court of Military Appeals was mindful of these principles, and it was "cognizant of the delicacy required when construing public policy expressions from a congressional enactment" (*United States v. Valadez, supra* at 474), when it decided *Russo*. The Congress made it a criminal offense to effect the enlistment of persons disqualified from serving in the Armed Forces. Article 84, Uniform Code of Military Justice, 10 U.S.C. § 884. The Court of Military Appeals seized upon this enactment as a clear expression of public policy that enlistment contracts for military service by such unqualified applicants, procured with knowledge of a government agent, were not in the public interest, and were void as contrary to public policy. Louis Russo was barred from military service, his recruiter knew this, and the recruiter effected the enlistment anyway. The Court therefore held that the enlistment contract was void *ab initio*.

Cognizant of the severity of this judicial action, the Court has been reluctant to expand this principle, however. *See* its rejection in *United States v. Valadez, supra*, of

this Court's decision in *United States v. Walley*, No. 76 1001 (N.C.M.R. 15 September 1976). The higher court has made clear that it is only when violation of the recruiting regulation also amounts in fact and law to either a lack of voluntariness, a statutory incapacity to contract, or a disability embraced within the enlistment contract principles intimated by the Supreme Court in the case of *In re Grimley*, 137 U.S. 147, 11 S.Ct. 54, 34 L.Ed. 636 (1890), that such a disqualification will be found sufficient to void the enlistment contract *ab initio* as a basis of court-martial jurisdiction. *United States v. Valadez, supra* at 472.

In *Valadez*, the Court of Military Appeals searched for but failed to find in Article 92(3), Uniform Code of Military Justice, any clear pronouncement of public policy that the enlistment of an ineligible applicant, procured through simple negligence of the recruiter, should be considered void *ab initio*. I would conclude that there is likewise no expression of public policy that concealment by the recruiter of a waivable deficiency, in violation of Article 92, should vitiate an otherwise viable enlistment contract. Appellant had the capacity to contract and voluntarily enlisted. He does not fall into any class of persons barred from military service by statute or even by regulation. *Cf. United States v. Wagner*, 5 M.J. 461 (C.M.A. 1978). There is no public policy that juvenile delinquents be excluded from military service.

Every applicant's enlistment must be approved by some military representative. It is of little public interest whether that approval be made by the recruiter or some higher official. Thus, there is no public policy as to who will grant the waiver.

Appellant was aware that his prior juvenile record could affect his enlistment and he deliberately concealed it, albeit at the encouragement of the recruiter. The contract principles enunciated in *In re Grimley, supra*, dictate that he be held to the terms of his enlistment contract.

I conclude that there was no impropriety by government agents that violates any clearly enunciated public policy, such as

would vitiate appellant's enlistment contract.

My colleagues cite two decisions of this Court as precedent for their holding in this case. There are others. I consider those cases to be incorrectly decided.

I would find that appellant was amenable to trial by court-martial by virtue of a valid enlistment.